(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The plain language of the statute does not limit consideration to funds from Powerine's estate. Under a hypothetical chapter 7 liquidation, it could have collected from First National as "provided by the provisions of this title." In its opinion, the BAP ruled that "[n]othing in title 11 would prevent a draw down on the credits here at issue had Powerine filed bankruptcy without paying Koch."

---

In my opinion, the BAP's decision does not avoid the plain language of section 547(b)(5). I respectfully dissent.

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**REAL PROPERTY LOCATED IN EL DORADO COUNTY AT 6380 LITTLE CANYON ROAD, EL DORADO, CALIFORNIA, APN: 092–500–09, including Appurtenances and Attachments Thereto, Defendant,**

**Robert M. Price, Claimant–Appellant.**

No. 93–15982.

United States Court of Appeals,
Ninth Circuit.

Submitted* Dec. 16, 1994.

Decided July 12, 1995.

As Amended on Denial of Rehearing
Sept. 13, 1995.

---

* The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34– 4 and Fed.R.App.P. 34(a).

William E. Jageman, Kensington, CA, for claimant-appellant.

Erik Schlueter, Asst. U.S. Atty., Placerville, CA, for plaintiff-appellee.

Before: SNEED, NORRIS, and HALL, Circuit Judges.

SNEED, Circuit Judge:

Robert Price appeals from a judgment of civil forfeiture against his 29.6 acres of property, including his own barn-residence, another residence, and outbuildings. Price argues that (1) summary judgment in favor of the United States was improper because its evidence was obtained through an illegal search in violation of the Fourth Amendment, (2) his due process rights were violated when his property was seized without prior notice and a hearing, (3) forfeiture of his interest in the entire property violates the Eighth Amendment, (4) the civil forfeiture proceeding subjected him to double jeopardy, and (5) the civil forfeiture statute is unconstitutional.

These arguments, as informed by a rapidly expanding body of case law authority, have transformed a case commenced by a few bungling local sheriffs that initially appeared fairly straightforward into one bristling with quite complex constitutional issues. On reflection, this should not be surprising, inasmuch as drug-related forfeitures have become quantitatively quite large, while remaining until recently procedurally uncomplicated.

For reasons related to Price's Eighth Amendment argument and recent developments under the Fifth Amendment relating to property seizures, we must reverse the judgment of civil forfeiture and remand to the district court for further proceedings.

## I.

### FACTS AND PROCEEDINGS BELOW

It all began on August 15, 1988, when four local sheriffs attempted to execute a search warrant on property owned by a Joseph Legan, which abutted the south side of Robert Price's property. Confused by their maps, two of the officers entered Price's property, thinking it was Legan's. The deputies looked around the premises and through the windows of the barn, which served as Price's residence. At some point they detected an odor of marijuana coming from within the barn-residence. They then rejoined the other two officers on Legan's property and reported their observations. All four returned to Price's property, entered the barn-residence, and searched it, despite the fact that at least one detective was aware that the barn was not on Legan's property and that the barn was in fact a residence. Inside the barn they found an elaborate marijuana-growing operation. Price was found on the premises and arrested. Thereafter, a search warrant for his property was obtained. From the state's point of view, already the prosecution faced problems.

Price was charged with cultivation of marijuana and possession of marijuana for sale under California Health & Safety Code

§§ 11358 and 11359. He moved to suppress the state's evidence, claiming that the warrantless search of his property violated the Fourth Amendment. After a hearing, the superior court denied Price's motion. Price pleaded guilty to possession of marijuana for sale on July 25, 1990. He was sentenced to two years' imprisonment. Price then appealed the denial of his motion to suppress. The state appellate court rejected his appeal on February 3, 1992. Price, who had been out on bail pending appeal, was remanded to state custody to serve his sentence.

Almost seven months after Price's guilty plea, on February 19, 1991, the United States entered the case and filed a complaint in the United States District Court for the Eastern District of California for *in rem* forfeiture of Price's property under 21 U.S.C. § 881(a)(7). This proceeding was stayed pending the outcome of Price's appeal in the state criminal case. Thereafter, both the United States and Price moved for summary judgment. The district court granted the government's motion for summary judgment, denied Price's motion, and entered a judgment of forfeiture against Price's 29.6 acres of property and structures on April 28, 1993.

Price timely appeals. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

1. The Fourth Amendment exclusionary rule applies in civil forfeiture proceedings. *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 702, 85 S.Ct. 1246, 1251, 14 L.Ed.2d 170 (1965); *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1063 (9th Cir.1994). Any evidence that is the product of an illegal search or seizure must be excluded from the proceeding. *$191,-910.00*, 16 F.3d at 1063.

2. We review a grant of summary judgment *de novo*. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994). Viewing the evidence in the light most favorable to Price, this court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* The grant of summary judgment in this case is reviewed in light of the quite summary procedural requirements provided by the statutory law of civil forfeitures. *United States v. One 56-Foot Motor Yacht Named the Tahuna*, 702 F.2d 1276, 1281 (9th Cir.1983).

3. Ordinarily, collateral estoppel is an affirmative defense that must be raised by the party seeking to use it, or else it is waived. *See, e.g., Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 840 F.2d 730, 735

## II.

## *DISCUSSION*

### A. *The State Search*

▮ The district court granted summary judgment in favor of the United States upon its showing of probable cause to believe that Price's property was involved in illegal drug activity, which Price failed to rebut. *See United States v. $5,644,540.00 in U.S. Currency*, 799 F.2d 1357, 1362 (9th Cir.1986). Price contends, however, that the primary evidence of drug dealing—the fruits of the warrantless state search of his property— should have been excluded from the civil forfeiture proceeding, because the search was invalid under the Fourth Amendment, as incorporated by the Due Process Clause of the Fourteenth Amendment.[1] Therefore, Price argues, the questionable legality of the search creates an issue of material fact, making summary judgment in favor of the United States improper.[2] We reject this argument.

▮ Price is collaterally estopped from raising the Fourth Amendment issue as a defense to the civil forfeiture action.[3] *See Ayers v. City of Richmond*, 895 F.2d 1267 (9th Cir.1990);[4] *see also United States v.*

(9th Cir.), *cert. denied*, 488 U.S. 948, 109 S.Ct. 378, 102 L.Ed.2d 367 (1988). The government did not brief the issue in this case; however, we raise it *sua sponte* in order to affirm the district court's decision. *See Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1172 (5th Cir.1992) (holding that a court can raise the issue of res judicata *sua sponte* in order to affirm a grant of summary judgment).

4. The preclusive effect of a state court judgment in a federal proceeding is governed by state law. *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 914–15 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994); *see also* 28 U.S.C. § 1738. In California, there are four criteria for application of collateral estoppel:

(1) the prior conviction must have been for a serious offense so that the defendant was motivated to fully litigate the charges; (2) there must have been a full and fair trial to prevent convictions of doubtful validity from being used; (3) the issue on which the prior conviction is offered must of necessity have been decided at the criminal trial; and (4) the party against whom collateral estoppel is asserted

*U.S. Currency in the Amount of $228,536.00,* 895 F.2d 908 (2d Cir.) (applying collateral estoppel to prevent relitigation in a civil forfeiture proceeding of a Fourth Amendment issue raised during suppression hearings at prior criminal trial), *cert. denied,* 495 U.S. 958, 110 S.Ct. 2564, 109 L.Ed.2d 747 (1990). The legality of the state search was fully and fairly litigated in the state court prosecution. Price raised the issue at the original suppression hearing, and his motion to suppress was denied. He then pleaded guilty, but appealed the denial of the motion; his appeal was also denied. Obviously, Price was a party to the state criminal proceeding, and, given the seriousness of the charges, he was motivated to fully litigate the issue at the time. *See Ayers,* 895 F.2d at 1271–72.

■ Price does not get two bites at the apple. The Supreme Court has expressly rejected the idea that "every person asserting a federal right is entitled to one unencumbered opportunity to litigate that right in a federal district court, regardless of the legal posture in which the federal claim arises." *Allen v. McCurry,* 449 U.S. 90, 103, 101 S.Ct. 411, 419, 66 L.Ed.2d 308 (1980) (holding that the state law of collateral estoppel applies in civil rights actions brought under 42 U.S.C. § 1983). This is so even if "the state court's decision may have been erroneous." *Id.* at 101, 101 S.Ct. at 418.

The evidence from the search of Price's property was thus properly admitted in the forfeiture proceeding. Viewing the evidence in the light most favorable to Price, we find that there are no genuine issues of material fact and that the government's evidence is more than sufficient to establish probable cause. Grant of summary judgment in favor of the United States on the issue of probable cause was appropriate.

B. *Federal Preforfeiture Seizure*

While this appeal was pending, Price properly brought to our attention the Supreme Court's decision in *United States v. James Daniel Good Real Property,* —— U.S. ——,

was a party or in privity with a party to the prior trial.

*Ayers,* 895 F.2d at 1271 (upholding use of collateral estoppel to prevent a defendant from bring-

114 S.Ct. 492, 126 L.Ed.2d 490 (1993). In that case, the Court held that the seizure of real property for forfeiture under 21 U.S.C. § 881(a)(7) without prior notice and a hearing violates the owner's due process rights under the Fifth Amendment. The Court reasoned that the immobility of real property ordinarily removes any resort to exigent circumstances to justify dispensing with the proper preseizure notice and hearing. *Id.* at ——, 114 S.Ct. at 503. Recently, this court held that *Good* applies retroactively. *United States v. Real Property Located at 20832 Big Rock Drive,* 51 F.3d 1402, 1405 (9th Cir. 1995).

Because this case is an *in rem* proceeding in federal court separate and apart from the *in personam* criminal proceedings in state court, the focus of our attention must be upon the former. Even though Price pleaded guilty to the state charges on July 25, 1990, the United States, to repeat, did not commence its forfeiture proceeding until February 19, 1991. Two days later, a warrant authorizing the seizure was obtained by the United States and a *lis pendens* notice was mailed to Price on the same day. This was the extent to which Price was given notice of the seizure. Obviously, no preseizure hearing was afforded, although under the law existing at that time its absence is understandable. Nonetheless, the constitutional requirements recognized by *Good* must be applied to this case. *Id.* at 1405–06.

■ Thus, we conclude that Price was deprived of his due process rights under the Fifth Amendment. Does this require us to declare the forfeiture invalid in all respects? We think not. This court, in a portion of its *Good* opinion not affected by the Supreme Court's subsequent decision, did not so hold. We observed:

If on remand the district court finds the filing of this proceeding to be timely [which the Supreme Court expressly found in its opinion], *the violation of Good's due process rights need not invalidate the forfeiture.* The " 'mere fact of the illegal

ing a § 1983 action alleging he had been illegally arrested). In *Ayers,* the court held that suppression rulings in the original criminal proceeding met these criteria. *Id.*

seizure, standing alone, does not immunize the [seized] goods from forfeiture.'" *Good is, however, entitled to the rents accrued during the illegal seizure of his home.*

*United States v. James Daniel Good Property Titled in the Name of James Daniel Good,* 971 F.2d 1376, 1384 (9th Cir.1992) (citations omitted) (emphasis added), *rev'd in part on other grounds,* —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993); *see also Big Rock Drive,* 51 F.3d at 1406.

However, an award of rents may not be the sole relief available to Price. The Supreme Court in *Good* offered these observations:

> Good's right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance....

> *The seizure of a home* produces a far greater deprivation than the loss of furniture, or even attachment. It *gives the Government not only the right to prohibit sale, but also the right to evict occupants, to modify the property, to condition occupancy, to receive rents, and to supersede the owner in all rights pertaining to the use, possession, and enjoyment of the property.*

> The Government makes much of the fact that Good was renting his home to tenants, and contends that the tangible effect of the seizure was limited to taking the $900 a month he was due in rent. But even if this were the only deprivation at issue, it would not render the loss insignificant or unworthy of due process protection.

—— U.S. at ——, 114 S.Ct. at 501 (citations omitted) (emphasis added).

 We hold, therefore, that the district court should make a determination of the appropriate monetary or other relief, if any, for loss of use and enjoyment to which Price is entitled for the illegal seizure of his property.[5] Whether or not Price's property is ultimately found to be forfeitable does not change this outcome; "fair procedures are not confined to the innocent. The question before us is the legality of the seizure, not the strength of the Government's case." *Good,* —— U.S. at ——, 114 S.Ct. at 505. Any property found to be not forfeitable under the Excessive Fines provision of the Eighth Amendment, discussed in Part II.C. of this opinion, shall be augmented by such other relief as may be appropriately imposed against the United States.

## C. *Excessive Fines Clause*

We turn now to the weightiest issue in this case. Price argues that forfeiture of all 29.6 acres violates the Excessive Fines Clause of the Eighth Amendment. The Amendment provides: "Excessive bail shall not be required, *nor excessive fines imposed,* nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII (emphasis added).

Approximately two months after the district court's judgment of forfeiture, the Supreme Court decided *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). It held that civil forfeitures under 21 U.S.C. § 881(a)(7) serve in part as punishment and are therefore subject to the Eighth Amendment's prohibition on excessive fines.[6] The Court, however, declined to enumerate the factors to be considered in determining whether a forfeiture is excessive, leaving the issue to be decided by the lower federal courts. *Id.* at ——, 113 S.Ct. at 2812.

We now undertake the performance of such portion of that duty as is properly ours.

---

**5.** That period should be measured beginning with the illegal seizure and ending when seizure of the property would have been constitutional, that is, when, after the notice and adversary hearing afforded by the civil forfeiture proceeding, judgment was rendered in the United States' favor. *See James Daniel Good,* 971 F.2d at 1384.

In the future, a defendant will ordinarily raise the constitutionality of a preforfeiture seizure at the outset of the civil forfeiture case. At that stage, the district court may consider dismissal of the United States' complaint, without prejudice, an appropriate remedy. *See United States v. One Parcel of Real Property,* 27 F.3d 327, 329 (8th Cir.1994).

**6.** The Court thus overruled *United States v. McCaslin,* 959 F.2d 786 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 382, 121 L.Ed.2d 292 (1992), in which this circuit refused to apply the Eighth Amendment to civil forfeitures. *See United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994).

We reverse the judgment of forfeiture and remand the case for determination of Price's Eighth Amendment claims in accordance with this opinion.

■ Our discussion of the excessive fines issue proceeds as follows. We commence by examining the case law concerning application of the Excessive Fines Clause to the civil forfeiture context. In doing so, we perceive a two-pronged approach for determining whether a forfeiture of real property constitutes an excessive fine: First, the forfeiture must be determined to have been proper. That is, the property must have been an "instrumentality" of the crime (a "nexus" must exist between the property and the offense). Second, the worth of the property must be "proportional" (not excessive) to the culpability of the owner. Next, we discuss the particulars of applying this approach. Finally, we examine both the possibility and process of severing the "offending" portion of the property from that which remains untainted.

### 1. The Case Law.

Since *Austin* was decided, other federal courts have formulated a variety of multifactor approaches in determining whether a forfeiture violates the Excessive Fines Clause. *See, e.g., United States v. Chandler,* 36 F.3d 358, 365 (4th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1792, 131 L.Ed.2d 721 (1995); *United States v. One Parcel Property Located at 427 & 429 Hall Street,* 853 F.Supp. 1389, 1399–1400 (M.D.Ala.1994); *United States v. Real Property Located at 6625 Zumirez Drive,* 845 F.Supp. 725, 734–35 (C.D.Cal.1994). However, generally some form of the two-pronged approach set out above has been followed. First, under the "instrumentality" (or "nexus") test, the forfeited property must have a sufficiently close relationship to the illegal activity. Second,

under the "proportionality" test, forfeiture of the property must not impose upon the owner a penalty grossly disproportionate to his offense.

The instrumentality or nexus test derives from Justice Scalia's concurring opinion in *Austin.* In rem forfeiture, he points out, has traditionally been based on the theory that the *property* is guilty of an offense, that is, it has been tainted by its unlawful use. — U.S. at —, 113 S.Ct. at 2813 (Scalia, J., concurring). Therefore, for purposes of determining whether a civil forfeiture is an excessive fine, the initial inquiry is whether the property (or the assets for which it has been exchanged in whole or in part) has a close enough relationship to the offense to permit its confiscation to any extent. As Justice Scalia explains:

> [S]tatutory in rem forfeitures have traditionally been fixed, not by determining the appropriate value of the penalty in relation to the committed offense, but by determining what property has been "tainted" by unlawful use, to which issue the value of the property is irrelevant.... The question is not *how much* the confiscated property is worth, but *whether* the confiscated property has a close enough relationship to the offense.

*Id.* at —, 113 S.Ct. at 2815 (emphasis in original); *see Chandler,* 36 F.3d at 363–66 (adopting Justice Scalia's approach and rejecting any proportionality analysis).

*Chandler* notwithstanding, many courts, having found a proper "taint," have also applied a proportionality test to determine whether a forfeiture constitutes an excessive fine.[7] The proportionality test compares the nature of the offense with the harshness, monetary or otherwise, of the forfeiture imposed on the owner. *See, e.g., United States v. Premises Known as RR # 1,* 14 F.3d 864,

---

7. Within this circuit, the Central District of California has already adopted such a test. *See Zumirez Drive,* 845 F.Supp. 725; *see also United States v. Real Property Located at 24124 Lemay Street,* 857 F.Supp. 1373 (C.D.Cal.1994) (applying the *Zumirez Drive* test). Many commentators have also recommended this twofold approach. *See* M. Lynette Eaddy, *How Much is Too Much? Civil Forfeitures and the Excessive Fines Clause After* Austin v. United States, 45 Fla.L.Rev. 709,

727–28 (1993); *The Supreme Court, 1992 Term— Leading Cases,* 107 Harv.L.Rev. 144, 210–14 (1993) (hereinafter *1992 Term* ); Robin M. Sackett, Comment, *The Impact of* Austin v. United States: *Extending Constitutional Protections to Claimants in Civil Forfeiture Proceedings,* 24 Golden Gate L.Rev. 495, 514 (1994); *see also* Stacy J. Pollack, Note, *Proportionality in Civil Forfeiture: Toward a Remedial Solution,* 62 Geo. Wash.L.Rev. 456, 457 (1994).

874–75 & n. 10 (3d Cir.1994); *Hall Street,* 853 F.Supp. at 1400; *Zumirez Drive,* 845 F.Supp. at 732–33. It has its sense in the Supreme Court's Cruel and Unusual Punishments Clause jurisprudence, particularly *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), where it was expressed as "[t]he principle that a punishment should be proportionate to the crime." *Id.* at 284, 103 S.Ct. at 3006. Forfeiture of real property can be "grossly disproportionate" to the offense involved. *E.g., Hall Street,* 853 F.Supp. at 1400.

### 2. *The Two–Pronged Approach.*

Although any forfeiture must meet the instrumentality test, its potentially harsh results, when applied alone, make us hesitate to accept it as the sole test for applying the command of *Austin.* We accept the proportionality test as a check on the instrumentality approach. This position is supported by the following reasons.[8]

 First, the instrumentality test rests on a sharp distinction between *in personam* (criminal) and *in rem* (civil) forfeitures, the importance of which was reduced by the Court's decision in *Austin. See 1992 Term, supra,* at 212–13. It made punishment the focus of attention. For purposes of the Excessive Fines Clause, "the question is not . . . whether forfeiture . . . is civil or criminal, but rather whether it is *punishment.*" *Austin,* —— U.S. at ——, 113 S.Ct. at 2806 (emphasis added). The Court recognized that, like *in personam* punishments, *in rem* forfeitures also punish the property owner. *Id.* at ——, 113 S.Ct. at 2812. As a result, "the focal elements of a *proportionality* test—the severity of the claimant's offense and the worth of the forfeited property—become relevant to *in rem* forfeitures as well." *1992 Term, supra,* at 213 (emphasis added). Only by add-

ing a proportionality test is the "excessiveness" of the fine determined by weighing both the *in rem* and *in personam* punishments against the seriousness of the crime. *See United States v. Littlefield,* 821 F.2d 1365, 1368 (9th Cir.1987); *United States v. Busher,* 817 F.2d 1409, 1415 n. 10, 1416 (9th Cir.1987). While to many one's liberty is more precious than one's property, all would concede that a deprivation of both is worse than the loss of either alone.

Second, because the punishment *in personam* is fixed by statute and sentencing guidelines in many instances, it is *fines* that must not be "excessive." It is "difficult to imagine, apart from a wholly arbitrary 'ceiling' figure, how a fine could ever be found 'excessive' without some analysis of the relationship between the penalty and the offense for which it is imposed." [9] In addition, the Excessive Fines Clause should be read to employ a proportionality standard as does the Supreme Court's interpretation of the Excessive Bail Clause, in which the Court reads "excessive" to require proportionality between the amount of bail and the "interest the Government seeks to protect," i.e., the risk of flight. *United States v. Salerno,* 481 U.S. 739, 754, 107 S.Ct. 2095, 2105, 95 L.Ed.2d 697 (1987); *see also 1992 Term, supra,* at 211; *Eaddy, supra,* at 722.

Third, and most persuasive, the majority in *Austin* specifically refused to endorse Justice Scalia's instrumentality test as "the sole measure of an *in rem* forfeiture's excessiveness." —— U.S. at —— n. 15, 113 S.Ct. at 2815 n. 15. Rather, the Court suggested that other factors were also relevant: "We do not rule out the possibility that the connection between the property and the offense may be relevant, but our decision today in no way limits the Court of Appeals from consid-

---

8. For this discussion, we are beholden to the Georgia Supreme Court's excellent analysis in *Thorp v. State,* 264 Ga. 712, 450 S.E.2d 416, 417–19 (1994).

9. Lyndon F. Bittle, Comment, *Punitive Damages and the Eighth Amendment: An Analytical Framework for Determining Excessiveness,* 75 Cal. L.Rev. 1433, 1450 (1987); *see also* Eaddy, *supra,* at 722 ("Logically . . . an excessive fine is a disproportionate fine."); Sackett, *supra,* at 511

(same); David J. Stone, *The Opportunity of* Austin v. United States: *Toward a Functional Approach to Civil Forfeiture and the Eighth Amendment,* 73 B.U.L.Rev. 427, 449 (1993) (same). Indeed, this circuit's cases applying the Eighth Amendment to criminal forfeitures have employed a proportionality analysis. *See Littlefield,* 821 F.2d at 1368; *Busher,* 817 F.2d at 1415; *accord United States v. Sarbello,* 985 F.2d 716, 724 (3d Cir.1993).

ering other factors in determining whether the forfeiture of Austin's property was excessive." *Id.*

Fourth, the Court's decision in *Alexander v. United States,* ⸺ U.S. ⸺, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993), suggests that a proportionality test under the Excessive Fines Clause may be *required.* In *Alexander,* the Court considered the defendant's Eighth Amendment challenge to criminal forfeiture of his adult bookstores and theaters resulting from his conviction for RICO violations. The Court remanded the case for an analysis under the Excessive Fines Clause, finding that the court of appeals had failed to distinguish between the defendant's excessive fines claim and his claim under the Cruel and Unusual Punishments Clause:

> [T]he court lumped the two together, disposing of them both with the general statement that the Eighth Amendment does not require any proportionality review of a sentence less than life imprisonment without the possibility of parole. But that statement has relevance only to the Eighth Amendment's prohibition against cruel and unusual punishments.

*Id.* at ⸺, 113 S.Ct. at 2775 (citation omitted). The Court did not explicitly state that proportionality review was required under the Excessive Fines Clause, but its direction to the court of appeals on remand implied as much: "It is in the light of the extensive criminal activities which petitioner apparently conducted through this racketeering enterprise over a substantial period of time that the question of whether or not the forfeiture was 'excessive' must be considered." *Id.* at ⸺, 113 S.Ct. at 2776.

Finally, proportionality analysis is especially appropriate in the civil forfeiture context because it is the sovereign that profits from such forfeitures. Justice Scalia recognized this when he stated:

> There is good reason to be concerned that fines, uniquely of all punishments, will be imposed in a measure out of accord with the penal goals of retribution and deterrence. Imprisonment, corporal punishment and even capital punishment cost a State money; [whereas] fines are a source of revenue. . . . [I]t makes more sense to scrutinize governmental action more closely when the State stands to benefit.

*Harmelin v. Michigan,* 501 U.S. 957, 978 n. 9, 111 S.Ct. 2680, 2693 n. 9, 115 L.Ed.2d 836 (1991) (Scalia, J., plurality opinion). All assets seized by the Department of Justice go into its Asset Forfeiture Fund, which the Attorney General is authorized to use for law enforcement purposes. 28 U.S.C. § 524(c). This incentive enhances the need for close scrutiny of *in rem* forfeitures.[10] Forfeitures, in effect, impose an impressive levy on wrongdoers to finance, in part, the law enforcement efforts of both the state and national governments. To that end, and to that extent, crime *does* pay. For this very reason, the judiciary, both state and federal, should be alert to detect constitutionally pro-

---

10. The Supreme Court has so acknowledged. "The extent of the Government's financial stake in drug forfeiture is apparent from a 1990 memo, in which the Attorney General urged United States Attorneys to increase the volume of forfeitures in order to meet the Department of Justice's annual budget target. . . ." *Good,* ⸺ U.S. at ⸺ n. 2, 114 S.Ct. at 502 n. 2. This court has observed that the "war on drugs" has resulted in an enormous increase in federal asset forfeitures in the last decade. *See $191,910.00,* 16 F.3d at 1069. The federal government's annual net gain from all types of forfeitures grew from $27 million in 1985 to $531 million in 1992. Jeff A. Schnepper, *Mandated Morality Leads to Legalized Theft,* USA Today Mag., Mar. 1994, at 35. Between 1985 and 1993, the Department of Justice seized $3.2 billion worth of assets. Charles Oliver, *A Forfeiture of Civil Liberties?,* Investor's Daily, Mar. 7, 1995, at A1. These assets include "homes, land, businesses, currency, cars, planes, yachts, and livestock." Pollack, *supra,* at 457. State and local governments also benefit from federal forfeitures. In recent years, the Department of Justice has transferred $1.2 billion in cash and property to over 3,000 state and local agencies. *Review of Federal Asset Forfeiture Program: Hearing Before the Legislation & National Security Subcomm. of the House Comm. on Government Operations,* 103d Cong., 1st Sess. 69 (1993) (statement of Cary H. Copeland, Director and Chief Counsel, Executive Office for Asset Forfeiture, Department of Justice). The most recent GAO estimate (in 1992) puts the federal government's total forfeiture inventory at $1.9 billion. Carl Horowitz, *What Can Government Take From You? Even Innocent People Can Have Property Seized,* Investor's Daily, Dec. 9, 1993, at 1. Civil forfeitures are thus a substantial source of revenue for both federal and local governments. *See* Schnepper, *supra,* at 35.

scribed injustices imposed on individual wrongdoers.

In sum, we find that a proportionality approach is appropriate to determine whether an *in rem* forfeiture, proper under an instrumentality test, violates the Excessive Fines Clause. *See Hall Street,* 853 F.Supp. at 1399; *accord United States v. One Parcel of Real Estate Located at 13143 S.W. 15th Lane,* 872 F.Supp. 968, 973 (S.D.Fla.1994).

### 3. *Application of the Test.*

■ Once the defendant makes the claim that the forfeiture violates the Excessive Fines Clause, the burden is on the government to show a substantial connection between the property and the offense. *15th Lane,* 872 F.Supp. at 974; *Hall Street,* 853 F.Supp. at 1399. The district court must then determine whether the property, or any portion thereof, bears a close enough relationship to the criminal activity to subject it to forfeiture. *Austin,* — U.S. at —, 113 S.Ct. at 2815 (Scalia, J., concurring).

■ As already emphasized, instrumentality is a threshold test.[11] If the government fails to show a substantial connection between the property and the offense, the forfeiture is invalid. *See Austin,* — U.S. at —, 113 S.Ct. at 2815 (Scalia, J., concurring). If the government succeeds in showing a substantial connection between the property, or the appropriate portion thereof, and the offense, then the claimant has the burden to show that forfeiture of his property would be grossly disproportionate given the nature and extent of his criminal culpability. *See Zumirez Drive,* 845 F.Supp. at 735–36.

■ In determining proportionality, the district court, bearing in mind any *in personam* punishment of the owner, should consider, *inter alia,* the following factors in determining the *harshness of the forfeiture:*

(1) the fair market value of the property;

(2) the intangible, subjective value of the property, e.g., whether it is the family home; and

(3) the hardship to the defendant, including the effect of the forfeiture on defendant's family or financial condition.[12]

---

11. We note that several of our sister circuits have interpreted the language of 21 U.S.C. § 881(a)(7) itself to impose an instrumentality test. The First, Fourth, Sixth, and Eleventh Circuits have interpreted the statute to require proof of a "substantial connection" between the property and the criminal offense. *See United States v. Real Property Known & Numbered as Rural Route 1,* 24 F.3d 845, 848 (6th Cir.1994); *United States v. 2204 Barbara Lane,* 960 F.2d 126, 129 (11th Cir.1992); *United States v. Parcel of Land & Residence at 28 Emery St.,* 914 F.2d 1, 3–4 (1st Cir.1990); *United States v. One Parcel of Real Estate Located at 7715 Betsy Bruce Lane,* 906 F.2d 110, 112–13 (4th Cir.1990).

Were we to do likewise, of course, our instrumentality test under the excessive fines analysis would be redundant. However, we respectfully disagree with that approach. On its face, § 881(a)(7) requires only a showing that the real property was used "to facilitate" the commission of an offense. We believe this language sets a lower threshold for forfeiture. Thus, we agree with the more expansive interpretation of the statutory language adopted by the Second, Third, Seventh, and Eighth Circuits, which have rejected the "substantial connection" requirement. *See United States v. Premises Known as RR # 1,* 14 F.3d 864, 868–69 (3d Cir.1994) (government "must show ... that the defendant property made the commission of the alleged crime 'less difficult and allowed it to remain more or less

free from obstruction or hindrance' ") (quoting *United States v. RD 1,* 952 F.2d 53, 57 (3d Cir. 1991)); *United States v. All Right, Title & Interest in Real Property & Appurtenances Thereto Known as 785 St. Nicholas Ave. & 789 St. Nicholas Ave.,* 983 F.2d 396, 403 (2d Cir.) (only "nexus" between property and offense must be shown, not "substantial connection"), *cert. denied,* — U.S. —, 113 S.Ct. 2349, 124 L.Ed.2d 258 (1993); *United States v. Certain Real Property,* 943 F.2d 721, 725 (7th Cir.1991) ("[T]he government must only demonstrate that the nexus is more than incidental or fortuitous."); *United States v. Premises Known as 3639–2d St., N.E.,* 869 F.2d 1093, 1096–97 (8th Cir.1989) (government must show facilitation, that is, "something more than an incidental or fortuitous contact between the property and the underlying illegal activity"); *see also United States v. One Parcel of Real Property,* 904 F.2d 487, 489–90 & n. 1 (9th Cir.1990) (suggesting that no substantial connection test is required by § 881(a)(7)) (dictum). It is therefore possible for a property forfeiture to satisfy the statutory nexus requirement, yet fail the test of the Excessive Fines Clause.

12. *See United States v. One 1990 Ford Ranger Truck,* 876 F.Supp. 1283, 1289 & n. 13 (N.D.Ga. 1995), *vacated in part on other grounds,* 888 F.Supp. 1170 (N.D.Ga.1995); *15th Lane,* 872 F.Supp. at 974; *Hall Street,* 853 F.Supp. at 1400; *Zumirez Drive,* 845 F.Supp. at 734.

The *culpability of the owner* should include consideration of the following factors:

(1) whether the owner was negligent or reckless in allowing the illegal use of his property; or

(2) whether the owner was directly involved in the illegal activity, and to what extent; and

(3) the harm caused by the illegal activity, including (a) (in the drug trafficking context) the amount of drugs and their value, (b) the duration of the illegal activity, and (c) the effect on the community.[13]

The *owner's* culpability is relevant because it is the owner who is punished by the forfeiture. *Zumirez Drive*, 845 F.Supp. at 736; *see Austin*, — U.S. at — – —, 113 S.Ct. at 2810–11.

### 4. Severability.

 A forfeiture of an owner's property that was an instrumentality of the crime, but which appears to be an excessive fine within the meaning of the Eighth

Amendment, must be reduced. *United States v. Bieri*, 21 F.3d 819, 824–25 (8th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 208, 130 L.Ed.2d 138 (1994); *see also Sarbello*, 985 F.2d at 718; *Littlefield*, 821 F.2d at 1368; *Busher*, 817 F.2d at 1416.[14] In this case, Price attempted to argue in the forfeiture proceeding that his property is actually two separate parcels, only the smaller of which was involved in the marijuana operation. On remand, the district court should consider this claim.[15]

 Once the true instrumentality of the crime is fixed, the issue of excessiveness becomes more difficult. Thus, even though an entire parcel of land may be an instrumentality of the crime, forfeiture of the parcel may nonetheless be a penalty grossly disproportionate to the culpability of the owner. If, for example, one marijuana plant were found growing on the King Ranch, forfeiture of all 825,000 acres would violate the Eighth Amendment.[16] In any instance in

---

**13.** The court, however, must *not* put "full responsibility for the 'war on drugs' on the shoulders of every individual claimant." *United States v. Certain Real Property & Premises Known as 38 Whalers Cove Drive*, 954 F.2d 29, 37 (2d Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992).

**14.** In some instances, the apparently forfeitable property may include a portion not properly forfeitable as an instrumentality of the crime. The offending property must be separated from the property not involved in the criminal activity. As Justice Scalia explains:

[I]n the case of deodands, juries were careful to confiscate only the instrument of death and not more. Thus, if a man was killed by a moving cart, the cart and its horses were deodands, but if the man died when he fell from a wheel of an immobile cart, only the wheel was treated as a deodand, since only the wheel could be regarded as the cause of death. Our cases suggest a similar instrumentality inquiry when considering the permissible scope of a statutory forfeiture.

— U.S. at —, 113 S.Ct. at 2815 (Scalia, J., concurring) (citations omitted); *see also Chandler*, 36 F.3d at 364. Accordingly, dividing the property is appropriate where the property consists of two separate (and readily separable) parcels, only one of which is tainted.

**15.** The general rule is that adjacent tracts of land conveyed as a single parcel by a single deed to the defendant should be treated as one, indivisi-

ble piece of property subject to forfeiture. *United States v. Real Property Located at 1215 Kelly Road*, 860 F.Supp. 764, 765 (W.D.Wash.1994); *see United States v. Santoro*, 866 F.2d 1538 (4th Cir.1989). The owner may attempt to rebut this presumption by a showing of, *inter alia*, one or more of the following factors:

(1) the parcels are separately described in local land records;
(2) the parcels are taxed separately;
(3) the parcels are located in separate municipalities; or
(4) the parcels, though adjacent, are physically separated from each other, i.e., by a road or a creek.

*See United States v. Two Parcels of Property Located at 19 & 25 Castle Street*, 31 F.3d 35, 41 (2d Cir.1994); *Bieri*, 21 F.3d at 825 (Gibson, J., dissenting); *United States v. Smith*, 966 F.2d 1045, 1054–55 (6th Cir.1992).

Any such attempt to rebut the "single parcel" rule can be frustrated if "it is unreasonable or physically impossible to treat the property separately." *Castle Street*, 31 F.3d at 41. Such would be the case where, for instance, a building straddles both parcels, *id.*, or where severing the two would leave one parcel landlocked. The defendant owner, in response, must demonstrate a feasible way to separate the property involved in the offense from the remainder. *See Kelly Road*, 860 F.Supp. at 766.

**16.** "Covering 825,000 acres (1,289 square miles) ... the King Ranch is larger than Rhode Island and is crisscrossed by so many fences that they

which the forfeiture of a single tract would contravene the Excessive Fines Clause, the court should limit it to an appropriate portion or the more poisonously tainted portion of the property.

### D. *Double Jeopardy*

Price, relying on a recent decision of this court, also claims that the civil forfeiture, because it constituted a form of punishment, subjected him to double jeopardy. In that case the panel, reasoning from the Supreme Court's holding in *Austin*, held that civil forfeiture proceedings, to the extent they serve as punishment, are subject to the Double Jeopardy Clause. It followed that "a criminal action and a forfeiture action based on the same offense must now be brought in the same proceeding." *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210, 1222 (9th Cir.1994). This rule is inapplicable to this case.

The state and federal governments are separate sovereigns. Successive prosecutions based on the same underlying conduct do not violate the Double Jeopardy Clause if the prosecutions are brought by separate sovereigns. *United States v. Koon*, 34 F.3d 1416, 1438 (9th Cir.1994), *petition for cert. filed* (Apr. 10, 1995) (No. 94–1664). Price was convicted in a state court; hence, the federal government was free to pursue the subsequent civil forfeiture claim against him.

Price's situation, moreover, is not governed by *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). Under *Bartkus*, Price could claim double jeopardy if he were able to prove that the federal prosecutors were mere "tools" of the state or that the federal forfeiture proceeding was a "sham" carried out at the behest of the state. *Koon*, 34 F.3d at 1438. This he cannot do. It is true that the El Dorado County prosecutor in charge of the state criminal action against Price subsequently pursued the federal forfeiture action as a "Special Assistant United States Attorney," while still on the county payroll. But this fact, without more, is not sufficient to allege a "sham" prosecution. Close coordination between state and federal authorities, including "the employment of agents of one sovereign to help the other sovereign in its prosecution," does not implicate the Double Jeopardy Clause. *United States v. Figueroa–Soto*, 938 F.2d 1015, 1020 (9th Cir.1991), *cert. denied*, 502 U.S. 1098, 112 S.Ct. 1181, 117 L.Ed.2d 424 (1992); *accord United States v. Paiz*, 905 F.2d 1014, 1024 (7th Cir.1990) (holding that the fact "that an Indiana prosecutor was later designated a Special Deputy United States Attorney for purposes of the federal prosecution" was insufficient to establish a sham prosecution), *cert. denied*, 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991). Nor is El Dorado County's possible pecuniary interest in the federal forfeiture proceeding sufficient to transform the federal government into a mere "tool" of the county.[17]

### E. *Constitutionality of Civil Forfeiture Statute*

Finally, Price argues that 21 U.S.C. § 881 is unconstitutional on its face. We reject this argument. This court has already upheld the statute against a facial challenge. *United States v. One 1972 Mercedes–Benz 250*, 545 F.2d 1233, 1236 (9th Cir.1976).

### III.

### CONCLUSION

This case is remanded to the district court to determine whether the forfeiture of Price's entire 29.6 acres and all the structures thereon was proper and, if not, what portion is properly forfeitable. The district court then must determine whether the property properly forfeitable constitutes an excessive fine within the meaning of the Eighth Amend-

---

would reach from cattle headquarters to Boston if stretched end to end." R. Michael Patterson, *Where Cowboys Were Born*, N.Y. Times, Mar. 19, 1995, § 5, at 8.

**17.** "[T]he fact that the Attorney General may choose to share the forfeited property with a local law enforcement agency is inadequate to show that the United States government, which no doubt has its own interest in the proceeds, is here acting as a 'cover' for the [state]." *Whalers Cove Drive*, 954 F.2d at 38 (applying the Double Jeopardy Clause to a civil forfeiture under 21 U.S.C. § 881(a)(7)).

ment and, if so, the extent to which it is excessive. Also on remand the district court must consider the extent to which monetary relief may be appropriate for the alleged seizure of Price's property in violation of due process under the Fifth Amendment.

In all other respects, the judgment favoring the United States is affirmed.

AFFIRMED IN PART, and REVERSED IN PART and REMANDED.