UNITED STATES of America,
Plaintiff,

v.

ONE RESIDENTIAL PROPERTY LO-
CATED AT 325 SKYLINE CIRCLE,
FALLBROOK, CALIFORNIA, et al.,
Defendants.

Lawrence Nedeau, Claimant.

Civil No. 05CV1625 JAH(AJB).

United States District Court,
S.D. California.

Feb. 12, 2008.

David McNees, Kathleen W. Clark, United States Attorney Office, San Diego, CA, for Plaintiff.

Lawrence Nedeau, Santa Monica, CA, pro se.

Paul L. Gabbert, Law Offices of Paul L. Gabbert, Santa Monica, CA, for Claimant.

## ORDER DENYING CLAIMANT'S MO-TION FOR DETERMINATION THAT FORFEITURE OF THE DE-FENDANT PROPERTY IS GROSS-LY DISPROPORTIONATE TO THE OFFENSE AND TO REDUCE OR ELIMINATE THE FORFEI-TURE [DOC. # 22]

JOHN A. HOUSTON, District Judge.

### INTRODUCTION

Now pending before the Court is the motion of claimant Lawrence Nedeau ("claimant" or "Nedeau") seeking this Court's determination that the forfeiture of the defendant property, a 3.27 acre parcel of land [1] located at 325 Skyline Circle,

---

1. *See* Reporter's Transcript of Proceedings held on April 2, 2007 (hereinafter "RT") at 40; Reed Decl. ¶ 5.

in Fallbrook, California (the "defendant property"), is grossly disproportionate to the offense and to reduce or eliminate the forfeiture. The motion has been fully briefed by the parties and an evidentiary hearing has been conducted. After a careful consideration of the pleadings and relevant exhibits submitted, the testimony presented at the hearing, and for the reasons set forth below, this Court DENIES claimant's motion in its entirety.

## BACKGROUND

### 1. Factual Background [2]

Claimant is the owner of the defendant property on which he operates an organic farming business named "Budwood Organic Farms." Nedeau Decl. I [3] ¶ 1; Nedeau Decl. II ¶ 2. The property was appraised on July 5, 2005 at $300,000. Dressler Decl. ¶ 13. Nedeau knew that marijuana was being cultivated on his property since February 2005. RT at 40, 42–44, 64. Nedeau explains that, in February 2005, he became aware that one of his employees, Sergio Salazar,[4] along with an associate of Salazar's (named "Juan" aka "Flako") had been growing marijuana on his property without Nedeau's knowledge. Nedeau Decl. I ¶ 8; RT at 40. However, Nedeau claims that, after he was shown what appeared to be a lawful certificate for medicinal marijuana cultivation issued to Juan, he granted Salazar and Juan permission to continue the cultivation of only twenty-five medicinal marijuana plants. Nedeau Decl.

I ¶ 8; Nedeau Decl. II ¶ 12; RT at 41, 43, 46, 47. Nedeau expected to be compensated for the use of his property. Nedeau Decl. II ¶ 11; Reed Decl. ¶ 18; RT at 44, 66, 117, 129, 130.

In early May 2005, two agents of the Drug Enforcement Administration's Narcotic Task Force ("NTF"), Steven Reed and Cary Dressler, investigated the defendant property along with an adjacent piece of property located at 353 Skyline Circle (the "adjacent property")[5] based on information received earlier in the year that marijuana was being grown on the land. Reed Decl. ¶¶ 5, 6; Dressler Decl. ¶ 4; RT at 15–16. Prior to the execution of the search warrant that resulted in the criminal charges forming the basis of the forfeiture at issue, the NTF agents visited the property twice. Reed Decl. ¶¶ 6–9; Dressler Decl.¶¶ 4–7; RT at 15, 18, 20–25, 28–29. During the first visit, the agents observed a number of marijuana plants growing in plastic bags located in three "Quonset-hut" style greenhouses on the adjacent property and a substantial number[6] of plants in a similar style greenhouse on the defendant property. Reed Decl. ¶ 7; Dressler Decl. ¶ 5; RT at 20, 22, 23–25. When they returned for the second visit two weeks later, the agents observed that the marijuana plants were still present on the adjacent property but, where the substantial number of plants had been located, only approximately 40 remained. The agents also observed that the plastic

---

**2.** The following factual background constitute this Court's findings of fact based on a thorough review of the record presented in this case.

**3.** "Nedeau Decl. I" refers to the Declaration of Lawrence Nedeau dated November 13, 2006 filed in support of claimant's moving papers. "Nedeau Decl. II" refers to the Declaration of Lawrence Nedeau dated March 6,2007 filed in support of claimant's reply brief.

**4.** Nedeau believes Sergio Salazar has fled the country to Mexico. *See* Nedeau Decl. ¶ 10.

**5.** The adjacent property was leased to Nedeau at a rate of $1,000 per year. Reed Decl. ¶¶ 5, 11; RT at 39, 62, 63; Govt's Exh. G.

**6.** Deputy Reed testified that he saw approximately 500 plants on that first occasion. *See* Reed Decl. ¶ 7; RT at 21, 120.

window covering the opening the agents looked through had been replaced with a "'see-through' screen." Reed Decl. ¶ 9; Dressler Decl. ¶ 7; RT at 26–27.

A search warrant was executed on the defendant property on May 20, 2005. Reed Decl. ¶ 10; Dressler Decl. ¶ 8. During the search, two greenhouses on the defendant property were found to contain marijuana plants: the western greenhouse with 68 two-foot tall plants and a second greenhouse located in the center of the property east of the first one (the "eastern greenhouse") which contained 408 two-foot tall marijuana plants and 248 small marijuana seedlings in plastic cups. Reed Decl. ¶¶ 19–20; Dressler Decl. ¶¶ 9–10; RT at 106–107, 109–110; Gov't Exhs. F, K; Clmt's Exhs. 6a, 7a, 8a, 26.

Nedeau was subsequently charged, in state court, with one count of possession of marijuana for sale and one count of cultivating marijuana. *See* Doc. # 23, Exh. 1; RT at 68. On November 28, 2005, Nedeau pled guilty to cultivating marijuana as charged in count two, admitting he "did unlawfully plant, cultivate, harvest; dry, and process marijuana" and was sentenced to 365 days custody suspended for three years pending successful completion of 18 months of probation, fined $239 and ordered to pay restitution of $200. Doc. # 23, Exhs. 2, 3; RT 68, 81, Gov't's Exh. J.

## 2. Procedural History

A complaint for forfeiture of the defendant property was filed on August 16, 2005, along with a notice of lis pendens. Docs. # 1, 2. Nedeau file in his claim on October 7, 2005 and an answer to the complaint on October 26, 2005. Pre trial dates were subsequently set and discovery proceeded apace. On May 5, 2006, the

Honorable Anthony J. Battaglia, United States Magistrate Judge, ordered discovery stayed at he joint request of the parties. This Court, on July 20, 2006, entered a stipulated judgment of forfeiture, preserving claimant's argument on Eighth Amendment proportionality for resolution by this Court pursuant to 18 U.S.C. § 983(g).

Claimant filed the instant proportionality motion on December 5, 2006 and the government filed a response in opposition to the motion on February 1, 2007. Based on the agreement of the parties, the hearing date of February 15, 2007 was continued to March 22, 2007. Claimant filed his reply brief on March 15, 2007. An evidentiary hearing was conducted on April 2, 2007, after which the matter was taken under submission. The parties each subsequently submitted proposed findings of fact for the Court's review.[7]

## DISCUSSION

## 1. Legal Standard

■ The parties agree that the controlling law in this area is *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). *See* Doc. # 22 at 6; Doc. # 23 at 5. The Supreme Court, in *Bajakajian*, set out four factors to be applied in determining whether a forfeiture of property is grossly disproportionate to the offense and, therefore, violative of the Excessive Fines Clause of the Eighth Amendment: (1) the nature and extent of the crime; (2) other related illegal activities; (3) the criminal penalties; and (4) the harm caused. *Id.*, 524 U.S. at 337–40, 118 S.Ct. 2028. The Supreme Court, in applying those factors, found as follows:

Respondent's crime was solely a reporting offense. It was permissible to trans-

---

7. Claimant also filed objections to the government's proposed findings of fact. *See* Doc. # 36. However, as the government points out in its objections to claimant's filing, *see* Doc.

# 37, this Court expressly precluded any further briefs. *See* RT at 142. Therefore, this Court does not consider claimant's objections in its determination.

port the currency out of the country so long as he reported it. Section 982(a)(1) orders currency to be forfeited for a 'willful' violation of the reporting requirement. Thus, the essence of respondent's crime is a willful failure to report the removal of currency from the United States. Furthermore, as the District Court found, respondent's violation was unrelated to any other illegal activities. The money was to be used to repay a lawful debt. Whatever his other vices, respondent does not fit into the class of persons for whom the statute was principally designed: He is not a money launderer, a drug trafficker, or a tax evader. And under the Sentencing Guidelines, the maximum sentence that could have been imposed on respondent was six months, while the maximum fine was $5,000. Such penalties confirm a minimum level of culpability.

The harm that respondent caused was also minimal. Failure to report his currency affected only one party, the Government, and in a relatively minor way. There was no fraud on the United States, and respondent caused no loss to the public fisc. Had his crime gone undetected, the Government would have been deprived only of the information that $357,144 had left he country.

*Bajakajian,* 524 U.S. at 337–340, 118 S.Ct. 2028 (footnotes and internal citations omitted). The burden is on claimant to establish by a preponderance of the evidence at a hearing before the court without a jury that the forfeiture is constitutionally excessive. 18 U.S.C. § 983(g)(3).

## 2. Analysis

### a. The Nature and Extent of the Crime

■ The government contends the nature of the offense here is grave because it "stems from a violation of 21 U.S.C. § 841(a)(1), which makes it a crime, among other things, to manufacture a controlled substance . . . or to possess [it] with the intent to distribute it." Doc. # 23 at 6–7. The government points out that there was a substantial amount of marijuana found growing on claimant's property: 476 two-foot plants and an additional 248 smaller marijuana plants in one-inch grow cups. *Id.* at 7. The government notes claimant admitted the marijuana was "not being grown for personal use and was to be distributed in some manner." *Id.* Claimant contends the government's position concerning the nature of the crime at bar is a "grossly overbroad view" that "would preclude [a] proportionality analysis whenever 21 U.S.C. § 841(a)(1) is violated." Doc. # 26 at 4. Claimant contends that, based on California law at the time, the nature of the offense here is "closer to a technical violation of California's medical marijuana statutes . . . than to [the government's] imaginary commercial marijuana growing scheme." *Id.* at 6 (citing Cal.H & S Code §§ 11362.7(d), 11362.775). Claimant also contends that the extent of his crime is limited because the growing operation "had only been in place for three months and no marijuana was harvested or sold." *Id.*

This Court is unconvinced that the nature and extent of claimant's crime is minimal. The record reflects that a substantial number of marijuana plants (476 plants and 248 seedlings) was involved in the offense to which claims not plead guilty. The sheer number of plants involved belies any argument of a "technical" violation of California law and contradicts claimant's claim that the operation was in its infancy at the time it was discovered by law enforcement. Therefore, this Court finds this factor weighs in the government's favor.

### b. Other Related Illegal Activities

In his motion, claimant states he "is not a person with a drug or criminal history"

but, instead, "is a citizen who has devoted his life to community activities . . ." Doc. # 22 at 1. Claimant notes that he has a bachelor's degree in public affairs, a master's degree in public health, and has performed many years of service with the Peace Corps. *Id.* Claimant contends he is not the type of person with a drug or criminal history and, thus, bears "no resemblance to a narcotics criminal." *Id.* at 1, 6. Claimant claims he received no revenue from "this one-time failed marijuana grow attempt" and had to "pay tens of thousands of dollars in legal fees in this case and in [his] state court criminal case." Nedeau Decl. I ¶ 12. Claimant states "there was no other related illegal activity present" and his "offense was restricted to allowing others to use a small portion of his farm to grow marijuana that was neither harvested or sold." *Id.* at 13. The government contends there is evidence in the record of other related criminal activities that would tend to create an inference claimant is a drug trafficker, pointing to the evidence inferring claimant had some control over the growing operation. *See* Doc. # 23 at 10. However, the government has presented no evidence of other related activities supporting a finding that claimant is, or was, a drug trafficker or even personally used or sold illegal drugs of any kind. Claimant claims he is not a drug trafficker nor does his state court plea turn him into one simply because he agreed to allow 25 plants to be grown on his property. Doc. # 26 at 10. This Court finds no evidence in the record of other

related illegal activities that may weigh against claimant. Therefore, this Court finds this factor weighs in claimant's favor.

#### c. Criminal Penalties

Claimant contends this factor weighs in his favor, pointing to the minimum fine and sentence that would have likely been imposed. *See* Doc. # 22 at 8–9; Doc. # 26 at 15. However, *Bajakajian* considered the maximum penalties, not the minimum, that could have been imposed as "certainly relevant evidence" in determining proportionality. *See id.,* 524 U.S. at 338–339, 339 n. 14, 118 S.Ct. 2028. The maximum statutory fine [8] for the offense here is large: $1,000,000 for less than 100 plants; $2,000,000 for more than 100. *See* 21 U.S.C. § 841(b)(1)(B)(vii); 21 U.S.C. § 841(b)(1)(C). Even if claimant is only held criminally responsible for less than 100 plants found on his property, the maximum fine is still significantly more than the appraised value of the defendant property. Under the sentencing guidelines, the maximum fine for the underlying criminal conduct here is also $2,000,000 (Section 2D1.1(c)(9) at Level 22). *See* U.S.S.G. § 5E1.2.

The custodial sentencing range under the sentencing guidelines for a defendant facing federal charges for the same conduct runs from 41 to 51 months (Level 22, Criminal History Category I) to 84 to 105 months (Level 22, Criminal History Category VI). Although claimant argues that the guidelines range should be based on 8 plants, at most, not the entire 476 plants, thereby giving him a base offense level of 12 to 14,[9] claimant is responsible for the

---

8. Although a comparison of the statutory fine alone to the forfeiture could be dispositive, *"Bajakajian* suggests the maximum penalties under the Guidelines should be given greater weight than the maximum penalty authorized by statute . . ." *United States v. 3814 NW Thurman Street,* 164 F.3d 1191, 1197 (9th Cir.1999).

9. A defendant's sentencing range at base offense level 12 would be 10 to 16 months at Criminal History Category I and 30 to 37 months at Criminal History Category VI. A defendant's sentencing range at base offense level 14 would be 15 to 21 months at Criminal History Category I and 37 to 46 months at Criminal History Category VI.

"all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.2, comment., n. 2. Based on Nedeau's knowledge of farming and the size of the greenhouse be allowed for growing marijuana, this Court finds that it is reasonably foreseeable Nedeau would know the number of plants would have increased exponentially, such as happened here.

Additionally, the Court finds claimant's testimony less than credible with respect to his lack of knowledge of the breadth of the marijuana grow operation. The nurturing and growth of his produce cultivated for the marketplace took place in two greenhouses positioned in close proximity to the area he routinely traversed while on the defendant property to conduct or supervise cultivation and harvesting of produce for sale at organic or whole food stores. Thus, this Court finds Nedeau must be held responsible for the entire number of plants found on the premises. The maximum statutory fines and the maximum penalties under the sentencing guidelines that could have been imposed convince this Court further that the forfeiture of the defendant property is constitutionally proportionate. Therefore, this factor weighs in favor of the government.

### d. Extent of Harm Caused

The final factor to be addressed is a determination of the extent of harm caused by the crime. *See Bajakajian*, 524 U.S. at 339, 118 S.Ct. 2028. Claimant, in his motion, contends that "no discernable harm

was caused to anyone" here, apparently because no marijuana was ever harvested or sold. *See* Doc. # 22 at 14. The government disagrees, contending the level of harm caused here is significant, in that had the marijuana been distributed, "countless harm could have been caused to society" based on its "high potential for abuse," its unaccepted medicinal value, and "lack of accepted safety for use under medical supervision." [10] Doc. # 23 at 15. Claimant argues, in reply, that any "theoretical harm in this case is subject to debate, especially where, as here, Mr. Nedeau earnestly believed that the limited cultivation he approved was in compliance with California law and would only be used for state sanctioned medicinal purposes." Doc. # 26 at 16. Claimant points out that the Ninth Circuit does lot approve of such "generic assertions about the potential harm caused by drugs" because " '[t]he court ... must not put 'full responsibility for the 'war on drugs' on the shoulders of every individual claimant.' " Doc. # 26 at 5 (quoting *United States v. Real Property Located in El Dorado County at 6380 Little Canyon Road, El Dorado, Cal.*, 59 F.3d 974, 986 n. 13 (9th Cir.1995)).

This Court agrees with claimant (and the Ninth Circuit) that the full responsibility of the "war on drugs" should not be placed on claimant's shoulders. However, this Court finds that claimant should bear responsibility for societal harm caused by the cultivation of marijuana on the defendant property. This Court finds the fact that a substantial number of plants were

**10.** In support, the government cites to a publication discussing the known harmful effects of marijuana smoking. Doc. # 23 at 15 (citing U.S. Food & Drug Admin., *Inter–Agency Advisory Regarding Claims That Smoked Marijuana Is a Medicine*, Apr. 20, 2006 (Doc. # 23, Exl. 5)). In reply, claimant takes issue with the government's citation to an FDA publication without referencing the fact that Califor-

nia, as well as other states, disagree with the FDA's stance on the issue. Doc. # 26 at 15–16. This Court finds it inappropriate to debate the effects, positive or negative, of marijuana smoking here. Therefore, this Court does not consider the effects, harmful or not, of marijuana smoking in determining proportionality.

being grown on the property which, if they had not been discovered, would have placed a significant amount of marijuana into society tip the proportionality scales in favor of the government on this factor.

### e. Other Factors

Claimant asserts that the *Bajakajian* factors are not the only factors that may be applied in determining proportionality. Doc. # 22 at 16 (citing *United States v. $100,348.00 in U.S. Currency,* 354 F.3d 1110, 1121 (9th Cir.2004)). Claimant explains that other relevant factors, such as " 'the intangible, subjective value of the property e.g., whether it is the family home; and ... the hardship to the defendant, including the effect of the forfeiture on defendant's family or financial condition.' "[11] *Id.* (quoting *El Dorado County,* 59 F.3d at 985). In addition, claimant notes the *Bajakajian* Court directed that forfeitures should be "proportioned so as not to deprive a wrongdoer of his livelihood" and both the Ninth Circuit and the Supreme Court strictly construe forfeitures against the government. *Id.* (citing *Bajakajian,* 524 U.S. at 335, 340 n. 12, 118 S.Ct. 2028; *United States v. One 1936 Model Ford V–8 De Luxe Coach,* 307 U.S. 219, 226, 59 S.Ct. 861, 83 L.Ed. 1249 (1939); *United States v. $191,910 in U.S. Currency,* 16 F.3d 1051, 1068 (9th Cir. 1994)). Claimant asserts that the forfeiture of the entire property would cause him to be unemployed, homeless and destitute. *See id.* at 16–17.

This Court finds claimant's assertions not credible and unsupported by the record. Claimant testified he is an educated man, has previously earned a living outside his current farming business, and has owned rental properties. Nedeau Decl.

¶¶ 2–4; RT at 54–55, 65, 72. Thus, the record reflects claimant has the ability to earn a living through other means than through his current farming business. Claimant further testified he only resides at the defendant property three days a week, residing at his mother's home the other four days, in contradiction to claimant's assertion that he would be homeless if the defendant property was forfeited. RT at 39, 55, 77. In addition, the record reflects the farming business was operating at a net loss since it began in 2003, thereby providing no income source to claimant, contrary to claimant's assertion that he needs the farm business to survive. *See* Gov't Exhs. H, I; RT at 52–53, 66, 95. Based on this Court's review of the record, none of claimant's other factors weigh in claimant's favor in the proportionality balancing test.

### f. Weighing the Factors

This Court finds that, based on its thorough examination of the pleadings, exhibits and testimony presented, all but one of the factors weigh in favor of the government and a finding that forfeiture of the entire defendant property is constitutionally proportionate. The sole factor that weighs in claimant's favor, that is, the lack of evidence supporting related illegal activities by claimant, does not provide enough weight, in comparison to the heavily weighted other factors, such as the nature and extent of the crime, the criminal penalties and the harm caused by the crime, to tip the scales in claimant's favor Accordingly, this Court finds that the factors weigh heavily in favor of a determination that the forfeiture at issue is constitutionally proportionate to the crime.

---

**11.** Claimant also argues that the impact of the forfeiture on third parties must also be examined, indicating that various third parties would be impacted unfavorably if the defendant property is fully forfeited to the government. *See* Doc. # 26 at 18–19. However, this Court has determined this impact is not properly considered here. *See* RT at 52.

## *CONCLUSION AND ORDER*

Based on the foregoing, IT IS HEREBY ORDERED that claimant's motion for a determination that the forfeiture of the defendant property is grossly disproportionate to the offense and to reduce or eliminate the forfeiture [doc. 22] is **DENIED in its entirety.**