62 F.3d 1161
 95 Cal. Daily Op. Serv. 6226, 95 Daily Journal
D.A.R. 10,617
UNITED STATES of America, Plaintiff-Appellee,
v.
$69,292.00 IN U.S. CURRENCY, Defendant,
Abdul Majeed Faheemi and Abdul Aziz Faheemi, Claimants-Appellants.
 No. 93-56545.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 9, 1994.
Decided Aug. 7, 1995.
 
 Michael J. Brennan, Manhattan Beach, CA, and Susan A. Kerans, Los Angeles, CA, for claimants-appellants.
 Mark A. Feldman, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before: Betty B. FLETCHER, David R. THOMPSON and Pamela Ann RYMER, Circuit Judges.
 Opinion by Judge FLETCHER; Partial Concurrence and Partial Dissent by Judge RYMER.
 FLETCHER, Circuit Judge:
 
 
 1
 The Faheemi brothers--Adbul Aziz Faheemi and Abdul Majeed Faheemi--appeal a summary judgment in the Government's favor. The district court forfeited to the government funds seized from Abdul Aziz as he was boarding an airplane for a flight to the United Arab Emirates. We reverse and remand.
 
 
 2
 What defenses and claims may be asserted and by whom turns on the ownership of the defendant currency--each of the brothers claims to own it.[1] Thus, on remand the district court should first resolve the competing claims to ownership before it turns to the merits of the defenses and claims. If Abdul Aziz can prove an ownership interest in some of the currency, he is entitled to assert a Double Jeopardy claim. If Abdul Majeed can establish an ownership interest in some of the currency, he is entitled to assert an innocent owner defense. Finally, only if these claims are not dispositive must the district court address whether the forfeiture was excessive. In the event the district court reaches the excessive forfeiture claim it should apply the factors set forth in United States v. Real Property Located in El Dorado County, 59 F.3d 974 (9th Cir.1995). We reverse and remand for further proceedings in accordance with our instructions.
 
 FACTS
 
 3
 On August 9, 1990, Abdul Majeed Faheemi wired $68,792 to an account held in the name of his brother, Abdul Aziz Faheemi, at a U.S. bank. The next day Abdul Aziz withdrew all of these funds in cash, completing a report to the Internal Revenue Service as required under U.S. law. Abdul Aziz had decided to leave the United States and return to his home country, the United Arab Emirates. Both brothers agreed that to avoid wire transfer fees, Abdul Aziz would hand-carry the money back to the United Arab Emirates. Abdul Majeed did not inquire of his brother as to whether he, Abdul Aziz, intended to comply with U.S. Customs laws when departing. Nor did he attempt to, himself, ascertain what requirements there might be or to comply with them.
 
 
 4
 On August 15, 1990, as Abdul Aziz was about to board a flight out of the country, he was stopped by Customs Inspectors. They explained to Abdul Aziz that if he intended to carry currency in excess of $10,000 out of the United States, he was required to complete a report declaring the amount of money he was taking out of the country. Abdul Aziz completed the form, but declared that he was carrying only $5,000. The inspectors searched Abdul Aziz and discovered $69,292 in his briefcase.
 
 
 5
 Abdul Aziz was arrested and charged with failing to report the export of monetary instruments in excess of $10,000, 31 U.S.C. Sec. 5316, and with making a false statement to a customs officer, 18 U.S.C. Sec. 1001. Abdul Aziz pled guilty. Judgment was entered on March 13, 1991. He served four days in prison, and paid a $50 special assessment and a $5,000 fine.
 
 
 6
 Almost two years later, on February 10, 1993, the Government filed a complaint for the forfeiture of the $69,292 seized from Abdul Aziz. Each brother asserted ownership and filed a claim to the money. The Government moved for summary judgment; the brothers opposed, asserting that the forfeiture violated the Eighth Amendment. In addition, Abdul Majeed asserted an "innocent owner" defense. The district court entered summary judgment for the Government, and this timely appeal followed.
 
 JURISDICTION
 
 7
 The district court had jurisdiction pursuant to 28 U.S.C. Sec. 1331. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 
 DISCUSSION
 I. DOUBLE JEOPARDY
 
 8
 Abdul Aziz claims that the forfeiture of the money violated his rights under the Double Jeopardy Clause by subjecting him to multiple punishments for the same crime. He relies on our recent decision in United States v. $405,089.23 in U.S. Currency, 33 F.3d 1210 (9th Cir.1994), which was decided after the briefs were filed in this case.[2]
 
 
 9
 We have no doubt forfeiture under section 5317 is punishment. See United States v. $405,089.23 in U.S. Currency, 33 F.3d 1210 (9th Cir.1994) (interpreting Austin v. United States, --- U.S. ----, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)). The $405,089.23 court reasoned:
 
 
 10
 First, because of "the historical understanding of forfeiture as punishment," [Austin, --- U.S. at ----, 113 S.Ct. at 2812,] there is a strong presumption that any forfeiture statute does not serve solely a remedial purpose. Second, where such a statute focuses on the culpability of the property owner by exempting innocent owners or lienholders, it is likely that the enactment serves at least in part to deter and punish guilty conduct. Finally, where Congress has tied forfeiture directly to the commission of specified offenses, it is reasonable that the forfeiture is at least partially intended as an additional deterrent to or punishment for those violations of law.
 
 
 11
 $405,089.23, 33 F.3d at 1221 (emphasis in original). Our determination requires us to look to the entire scope of the statutes which the government seeks to employ rather than to the characteristics of the specific property the government seeks to forfeit. Id. at 1220. The statutes at issue here are found in Subchapter II of Chapter 53 of Title 31, 31 U.S.C. Secs. 5311-28 (1988). They make it apparent that the forfeiture of unreported currency is intended, at least in part, to punish as well as to deter--both underlying purposes for punishment.
 
 
 12
 There are a number of indications that Congress viewed forfeiture under section 5317 as more than a civil penalty. Most important, section 5317 permits the Government to seek forfeiture of the entire amount of the unreported currency without regard to the cost or loss to the Government. See 31 U.S.C. Sec. 5317(c). In addition, the forfeiture provision is directly tied to the crime of failing to report the currency. See 31 U.S.C. Secs. 5316, 5317; see generally United States v. $145,139.00, 18 F.3d 73, 78-80 (2d Cir.) (Kearse, J., dissenting) (analyzing criminal purpose of section 5317), cert. denied, --- U.S. ----, 115 S.Ct. 72, 130 L.Ed.2d 27 (1994). The penalties under section 5321, which apply to domestic financial institutions and their principals, officers, or employees, are explicitly denominated "civil," 31 U.S.C. Sec. 5321, while section 5317 does not employ the word "civil," thereby implying a purpose of criminal punishment underlying the forfeiture. See 31 U.S.C. Sec. 5317(c). Also, the "civil" penalty under section 5321(a) is limited to an amount not exceeding $100,000. See 31 U.S.C. Sec. 5321(a). In contrast, a forfeiture under section 5317 is limited only by the value of the unreported funds. See 31 U.S.C. Sec. 5317(c).
 
 
 13
 We conclude that the statutory scheme viewed as a whole intends forfeiture under section 5317 to be "punishment."
 
 
 14
 There also cannot be any question but that Abdul Aziz has been subjected to two separate proceedings. Id. at 1217 ("[P]arallel actions, instituted at about the same time and involving the same criminal conduct, constitute separate proceedings for double jeopardy purposes.") (emphasis in original) (citing Jeffers v. United States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977)).
 
 
 15
 We do not hold that Abdul Aziz has been put twice in jeopardy because no determination has been made as to the ownership of the currency. Any such determination must be made by the district court on remand.
 
 II. INNOCENT OWNER DEFENSE
 
 16
 Abdul Majeed argues that the district court erred by entering summary judgment for the plaintiff on his innocent owner defense under 31 U.S.C. Sec. 5317. Abdul Majeed claims that he is the owner and has raised a genuine issue of material fact as to whether he took all reasonable steps to prevent the unlawful use of the defendant currency.
 
 
 17
 A district court's grant of summary judgment is reviewed de novo. Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir.1992). The district court must view the facts in the light most favorable to the nonmoving party, and may grant summary judgment only if there are no issues of material fact and summary judgment is appropriate as a matter of law. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). Once the government demonstrates probable cause that property was involved in an illegal transaction, the burden shifts to the claimant to refute the government's showing by a preponderance of the evidence. United States v. $5,644,540.00, 799 F.2d 1357, 1362 (9th Cir.1986).
 
 
 18
 On its face, section 5317 does not contain an innocent owner exception. However, in Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 689-90, 94 S.Ct. 2080, 2094-95, 40 L.Ed.2d 452 (1974), the Supreme Court opined that even if an innocent owner provision does not exist in a forfeiture statute, an owner has a right to establish his or her innocence.[3] The Court stated:
 
 
 19
 [I]t would be difficult to reject the constitutional claim of an owner whose property has been taken from him without his privity or consent. Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property....
 
 
 20
 Id. at 689, 94 S.Ct. at 2094 (citations omitted).
 
 
 21
 We agree with Abdul Majeed that he is entitled to assert an innocent owner defense under Calero-Toledo. He must establish three facts: his ownership interest in the property, any illegal use of the property was done without his knowledge or consent, and he took all reasonable steps to prevent the proscribed use of the property. See id. at 689-90, 94 S.Ct. at 2094-95.
 
 
 22
 Abdul Majeed's affidavit stated:1. He was the owner of the funds subject to forfeiture.
 
 
 23
 2. He was aware of the fact that his brother was returning to their home in the United Arab Emirates.
 
 
 24
 3. He and his brother agreed that the funds in question would be brought to the United Arab Emirates in cash to avoid transfer and commissions.
 
 
 25
 4. He did not discuss any attempt to evade the reporting laws of the United States in connection with the withdrawal of the funds from the bank or the transportation of the funds out of the country.
 
 
 26
 5. He was unaware of the fact that his brother was going to fail to comply with the U.S. reporting laws concerning the export of currency.
 
 
 27
 6. If he had known that his brother was going to fail to report, he would have taken steps to ensure that the report was made.
 
 
 28
 Under Calero-Toledo, Abdul Majeed had an affirmative duty to do "all that reasonably could be expected to prevent" Abdul Aziz from exporting the money without filing a report, as required under section 5317. Id. at 689, 94 S.Ct. at 2094-95. The Government argues that Majeed's actions were unreasonable as a matter of law because Abdul Majeed did not attempt to determine the legal requirements for the export of money, and because he did not attempt to fulfill those requirements himself. We are not so sure.
 
 
 29
 On summary judgment, all reasonable inferences must be drawn in favor of the non-moving party. Fed.R.Civ.P. 56. A fact-finder might find that Abdul Majeed acted reasonably. Abdul Majeed was in a foreign country dealing with a person in the United States whom he knew well (his brother). It could be reasonable to presume that his brother would act lawfully even without explicit instructions to do so. There were no allegations that Abdul Aziz had engaged in any prior wrong-doing, and the brothers had no apparent motive to hide the money. To the contrary, Abdul Aziz had reported the withdrawal of funds to the I.R.S., as required under U.S. law. The money had been sent to the brother in the United States and its attempted return was almost immediate. Given these facts, a fact-finder could conclude that Abdul Majeed acted reasonably when he agreed with his brother that the currency would be hand-carried back to their native land without explicitly directing him to comply with U.S. law or filing the report himself.
 
 
 30
 Because there was a genuine dispute of material facts to be resolved by the fact-finder, we reverse the district court's judgment.
 
 III. EXCESSIVE FINE
 
 31
 The claimants' final contention on appeal, predicated largely on Austin v. United States, --- U.S. ----, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), is that the forfeiture of the defendant currency violates the Excessive Fines Clause of the Eighth Amendment. Upon remand if the district court has the occasion to address the issue it should consider the factors set forth in United States v. Real Property Located in El Dorado County, 59 F.3d 974 (9th Cir.1995). In El Dorado, we applied a two-pronged approach to determine whether the civil forfeiture imposed an excessive fine. Under this approach, in order to survive an Excessive Fines challenge the property must under the "instrumentality" or "nexus" test have "a close enough relationship to the offense to permit its confiscation to any extent," id. at 982, and the value of the property must be "proportional" to the culpability of the owner, id. at 982.
 
 
 32
 The district court, even without benefit of El Dorado which was decided while this case was pending on appeal, appeared to understand what it must find. It held that the currency was an "instrumentality" of the crime and that there was a perfect proportionality between the culpability of the currency and the forfeiture. However, we disagree with its conclusion.
 
 
 33
 First off, its finding of "perfect proportionality" appears to be based on an analysis foreclosed by United States v. Busher, 817 F.2d 1409 (9th Cir.1987), which rejected similar reasoning by the Fourth Circuit. See id. at 1414-15 n. 9 (citing United States v. Grande, 620 F.2d 1026 (4th Cir.), cert. denied, 449 U.S. 830, 101 S.Ct. 98, 66 L.Ed.2d 35 and 449 U.S. 919, 101 S.Ct. 317, 66 L.Ed.2d 146 (1980)). As we noted in Busher, the approach that equates the instrumentality with perfect proportionality "merely states the issue" and does not relate the egregiousness of the crime to the amount of the forfeiture. Id. In the civil forfeiture context, El Dorado decided in light of Austin, requires consideration of other factors, including the in personam punishment of the owner, the hardship to the defendant and the defendant's family, and the culpability of the owner in relation to the crime. At 985-86.
 
 
 34
 Nor are we persuaded that currency lawfully acquired and possessed has that necessarily close relationship to the crime simply because it has not been reported. The crime is the withholding of information, 31 U.S.C. Sec. 5316, not the possession or the transportation of the money.
 
 
 35
 The money is not contraband. The currency is presumed under the statutory scheme to be lawfully acquired and possessed. The statutory scheme did not make the money itself contraband or the transport of the money culpable. The statute "imposes no legal limitation on the export of U.S. currency from the United States to foreign jurisdictions. Those leaving the United States have always been free to take with them such amounts of cash or other forms of money as they choose." See H.R.Rep. No. 91-975, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Admin.News 4394, 4398. Indeed, the reporting requirement applies to all currency, whether it is lawfully gained or not. Cf. 31 U.S.C. Sec. 5322(b) (doubling criminal penalties where failure to report is combined with another violation of U.S. law).
 
 
 36
 The Government argues that this case is controlled by One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972). In Austin, the Supreme Court distinguished cases involving drug forfeitures from customs violations cases as follows:
 
 
 37
 We have previously upheld the forfeiture of goods involved in customs violations as "a reasonable form of liquidated damages." One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 237, 93 S.Ct. 489, 493, 34 L.Ed.2d 438 (1972). But the dramatic variations in the value of conveyances and real property forfeitable under Secs. 881(a)(4) and (a)(7) undercut any similar argument with respect to those provisions. The Court made this very point in Ward: the "forfeiture of property ... is a penalty that ha[s] absolutely no correlation to any damages sustained by society or to the cost of enforcing the law." [United States v. Ward ], 448 U.S. at 254 [100 S.Ct. 2636, 2644, 65 L.Ed.2d 742 (1980) ].
 
 
 38
 --- U.S. at ---- - ----, 113 S.Ct. at 2811-12 (brackets in original) (emphasis added).
 
 
 39
 The same distinction should be made between failure to report and customs violations cases. One Lot Emerald Cut Stones involved smuggling of goods and failure to pay duty--that was the crime. Here, the crime is failure to report, not illegal possession, transportation, or smuggling dutiable items.[4] The currency was presumed to be lawfully possessed and not subject to duty; if Abdul Aziz had reported the currency as required under the statute, he would not have had to pay any duty or put the property in jeopardy of seizure as smuggled goods. It is legal to take currency out of the country. The sole purpose of the statute is to provide "certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C. Sec. 5311. The crime was depriving the government of information and not smuggling goods across the border and depriving the government of revenue.
 
 
 40
 We are also not persuaded by the government's further argument that the currency meets the instrumentality test because its existence was a precondition to the reporting requirement of 31 U.S.C. Sec. 5316. Simply put the existence of the currency as a precondition does not make it an instrumentality. For example, we would not characterize lawfully earned income an instrumentality forfeitable as such simply because a taxpayer wilfully failed to report that income on his tax return in violation of the tax code. See 26 U.S.C. Sec. 7202-03 (1994). The government would have us stretch the fiction of an "instrumentality" to the breaking point. See United States v. Certain Real Property & Premises Known As 38 Whalers Cove Drive, 954 F.2d 29, 35 (2d Cir.), cert. denied sub nom. Levin v. United States, --- U.S. ----, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992) (stating that an instrumentality is an "historic fiction ... that 'an instrument of harm is itself culpable.' "). Abdul Aziz's crime was to deprive the United States of certain information. The existence of the currency facilitated the commission of the crime only in the most technical sense.
 
 
 41
 We make no assessment as to whether the forfeiture meets the El Dorado test. If the issue is reached, El Dorado will require the district court to make appropriate factual findings. See 59 F.3d at 985-86.
 
 CONCLUSION
 
 42
 In summary, we remand so that the district court can first resolve the competing claims of ownership. Depending upon the outcome, Abdul Majeed may have an innocent owner defense or Abdul Aziz may have a Double Jeopardy claim. Should it be necessary to reach the excessive fines claim, the district court, guided by El Dorado, should make appropriate findings.
 
 
 43
 REVERSED AND REMANDED.
 
 
 44
 RYMER, Circuit Judge, dissenting and concurring in the judgment:
 
 
 45
 I am with the majority insofar as it remands this case for further proceedings in light of United States v. $405,089.23 in U.S. Currency, 33 F.3d 1210 (9th Cir.1994). However, I otherwise dissent.
 
 
 46
 All of Part I, a discussion of double jeopardy bereft of a holding, is superfluous to the disposition of the appeal before us. At this point, no one has any idea if Abdul Aziz has any ownership interest in the forfeited funds. Unless he does, Aziz obviously has no double jeopardy claim. The parties never briefed how Sec. 5317 mixes with the Double Jeopardy Clause. Part I is, therefore, a discussion in the air with which I cannot agree.
 
 
 47
 I also disagree with Part II. Abdul Majeed's declaration does not create a genuine issue of material fact because it fails to distinguish his conduct from that in Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 687, 94 S.Ct. 2080, 2093-94, 40 L.Ed.2d 452 (1974). It boils down to an assertion that Abdul Majeed hadn't a clue that his brother would violate any law. This cannot possibly support a reasonable inference that he had "proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property...." Calero-Toledo, 416 U.S. at 689, 94 S.Ct. at 2095 (emphasis added). Majeed did assure that Aziz would bring the funds back rather than wire them, after they had been wired the day before, to avoid transfer and commissions; he did not assure that Aziz would not avoid other burdens, like reporting the currency. The district court got it right, and I would affirm.
 
 
 48
 The discussion of the Eighth Amendment issue in Part III is likewise entirely dicta, as we have no idea if the district court will have to address that question. Nor is it correct--this case is controlled by One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972), which remains alive and well after Austin v. United States, --- U.S. ----, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and United States v. Real Property Located in El Dorado County, 59 F.3d 974 (9th Cir.1995). Moreover, it creates a circuit split. See United States v. $145,139.00, 18 F.3d 73 (2d Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 72, 130 L.Ed.2d 27 (1994) (holding that forfeiture of funds pursuant to Sec. 5317 does not violate Excessive Fines Clause). Here again I would affirm the district court.
 
 
 49
 I therefore concur only in the judgment of remand.
 
 
 
 [1]
 The dispute over ownership does not defeat standing. To "establish standing, appellants must claim an 'ownership or possessory interest in the property seized.' " United States v. $5,644,540.00, 799 F.2d 1357, 1365 (9th Cir.1986) (quoting United States v. $15,500.00, 558 F.2d 1359, 1361 (9th Cir.1977)) (emphasis added). The brothers have made the requisite claims
 
 
 [2]
 The claimant did not raise the double jeopardy argument in the district court, and did not raise it on appeal until oral argument. The Government has responded to the claimant's argument on the merits at oral argument and did not assert that Abdul Aziz waived the defense. Accordingly, we consider the issue to be properly before us
 
 
 [3]
 In Austin, the Supreme Court again expressed concern for "truly innocent owners," but declined to reach the issue because the forfeiture statute expressly provided for an innocent owner defense. --- U.S. at ---- & n. 10, 113 S.Ct. at 2809 & n. 10
 
 
 [4]
 As the Supreme Court noted in Austin, there is a much greater potential for "dramatic variations in the value of the conveyances and real property" where the defendant property is currency. Austin, --- U.S. at ----, 113 S.Ct. at 2812