United States Court of Appeals,

Eleventh Circuit.

No. 95-4181.

UNITED STATES of America, Plaintiff-Appellant,

v.

James W. DEAN, Defendant-Appellee.

June 27, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-8106-CR-NCR), Norman C. Roettger, Jr., Chief Judge.

ON SUA SPONTE RECONSIDERATION

Before KRAVITCH, ANDERSON and BARKETT Circuit Judges.

KRAVITCH, Circuit Judge:

In light of the Supreme Court's recent decision in *United States v. Ursery,* --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ---- (1996), 95-345 & 95-346, the court orders that the opinion filed April 24, 1996, 80 F.3d 1535, be modified as follows:

1) Footnote one is deleted in its entirety and replaced with the following:

Because the civil forfeiture provision in this case did not serve solely a remedial purpose, the forfeiture constituted punishment for purposes of the Excessive Fines Clause. *Austin v. United States,* 509 U.S. 602, 621-23, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993).

In determining whether a civil forfeiture constitutes punishment for purposes of analysis under the Excessive Fines Clause, we look to the statute as a whole. *See id.* at 622 n. 14, 113 S.Ct. at 2812 n. 14 (holding that the forfeiture of conveyances and real property pursuant to §§ 881(a)(4) and (a)(7) constituted punishment because under the statute the amount forfeited "can vary so dramatically that any relationship between the Government's actual costs and the amount of the sanction is merely coincidental"). Where the value of forfeited property bears no relationship to the government's costs, an inquiry into whether the forfeiture is remedial is not necessary;  it is almost certain that a

portion of the forfeited property will constitute punishment. For this reason, the *Austin* Court saw no need to look at the particular forfeiture involved to determine whether it was remedial. *Austin,* 509 U.S. at 622 n. 14, 113 S.Ct. at 2812 n. 14.

Furthermore, as the Supreme Court has recently observed:

It is unnecessary in a case under the Excessive Fines Clause to inquire at a preliminary stage whether the civil sanction imposed in that particular case is totally inconsistent with any remedial goal. Because the second stage of inquiry under the Excessive Fines Clause asks whether the particular sanction in question is so large as to be "excessive," a preliminary stage inquiry that focused on the disproportionality of a particular sanction would be duplicative of the excessiveness analysis that would follow.

*United States v. Ursery,* --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ---- (1996), (citation omitted).

In interpreting 31 U.S.C. § 5317, we assume that "forfeiture generally and statutory *in rem* forfeiture in particular historically have been understood, at least in part, as punishment." *Austin,* 509 U.S. at 618, 113 S.Ct. at 2810. Therefore, we consider if there is anything in the "[statutory] provisions or their legislative history to contradict the historical understanding of forfeiture as punishment." *Id.* Under § 5317, the amount forfeitable is determined by the amount of money a person attempts to take from the country. 31 U.S.C. § 5317(c), in relevant part, provides:

If a report under section 5316 with respect to any monetary instrument is not filed (or if filed, contains a material omission or misstatement of fact), the instrument and any interest in property, including a deposit in a financial institution, traceable to such instrument may be seized and forfeited to the United States government.

Because the value of the funds forfeited under the statute is completely unrelated to remedial goals, except by mere coincidence, there is a strong presumption that the forfeiture is, in part, punitive. This presumption is overcome only where there is a direct correlation between the value of the items seized and the damages caused by the defendant, for instance, where the items seized are contraband. *See Austin,* 509 U.S. at 619-21, 113 S.Ct. at 2811; *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984). The harm addressed by § 5317, however, is depriving the government of the information it seeks, and the amount of the forfeiture in

any particular case is only incidentally related to this harm. *See United States v. $69,292.00 in U.S. Currency,* 62 F.3d 1161, 1167-68 (9th Cir.1995). The money Dean was transporting belonged to him, and it is not a crime to transport one's own money out of the United States. Although § 5317 in part may serve the remedial goal of defraying some of the costs the government has spent in investigation, this is not sufficient to make it purely remedial. Forfeiture under § 5317 is not calculated to reimburse the government for the costs of investigating and prosecuting Dean. Again, this is because the amount forfeited is independent of any costs to the government and is based only on the contingent fact of how much currency is being transported. *Austin,* 509 U.S. at 622 n. 14, 113 S.Ct. at 2812 n. 14.

Congress's intent to punish through § 5317 is further manifested by the fact that forfeiture occurs only as the result of failing to report the funds. 31 U.S.C. §§ 5316, 5317; *see $69,292.00,* 62 F.3d at 1164; *United States v. U.S. Currency in the Amount of $145,139.00,* 18 F.3d 73, 78-80 (2d Cir.) (Kearse, J., dissenting), *cert. denied,* --- U.S. ----, 115 S.Ct. 72, 130 L.Ed.2d 27 (1994). "[A] forfeiture under § 5317 primarily visits retribution on the transporter of the funds for not having supplied the desired information, and acts as a potential deterrent." *145,139.00,* 18 F.3d at 80 (Kearse, J., dissenting) (discussing the most common forms of civil remedies and explaining why § 5317 is not a remedial provision).

Finally, we reject the government's argument that this case is controlled by *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972), where the Supreme Court upheld the forfeiture of goods involved in customs violations as a "reasonable form of liquidated damages." *Id.* at 237, 93 S.Ct. at 493. We agree with the Ninth Circuit that there is a distinction to be drawn after *Austin* between failure to report cases and customs violations cases. *United States v. $69,292 in U.S. Currency,* 62 F.3d at 1167. The crime in this case did not involve the smuggling of property out of the United States; rather, the crime was the failure to inform the government that currency in excess of $10,000 was being transported out of the country. Where a person attempts to avoid paying a duty, the crime committed does bear a correlation to the harm to society: the greater the value of the property, the greater the lost revenue. In contrast, because it is legal to take currency out of the United States, the harm that arises when a person deprives the government of information about how much is being removed from the country bears no relationship to the amount that person attempts to remove.

2) Judge Anderson's previously-filed special concurrence is

withdrawn, and he now joins the opinion of the court as modified.