**In the Matter of Theresa
A. STANFORD.**

No. 1:99–M–966.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 22, 1999.

Sharon Stokes, William Gaffney, U.S. Attorney's Office, Atlanta, GA, for United States of America.

Anthony Cochran, Carl Lietz, Chilivis, Cochran, Larkins & Bever, Atlanta, GA, for Theresa A. Stanford.

Larry D. Thompson, Evans Edwards, King & Spalding, Atlanta, GA, George (Buddy) Darden, Long, Alrdidge & Norman, Atlanta, GA, for Raymond McLendon.

## ORDER

THRASH, District Judge.

This matter concerns Motions to Disqualify United States Attorney Richard Deane and the entire U.S. Attorney's Office for the Northern District of Georgia from further investigation and any resulting prosecution of Ms. Theresa Stanford and Mr. Raymond McClendon. While Mr. Deane served as a U.S. Magistrate Judge, he issued a Report and Recommendation in a Title VII employment discrimination case filed by Ms. Stanford. Some of the facts of that Title VII case allegedly involve some of the same facts that are the subject of a grand jury investigation now being conducted by the U.S. Attorney's office. Ms. Stanford and Mr. McClendon contend that Mr. Deane's participation in the Title VII case in a judicial role creates an appearance of impropriety by Mr. Deane and the U.S. Attorney's office which necessitates disqualification. For the reasons set forth below, this Court denies both Ms. Stanford's Motion to Disqualify and Mr. McClendon's adopted Motion to Disqualify.

## I. BACKGROUND

Ms. Theresa Stanford served as Investment Officer for the City of Atlanta's Department of Finance from 1983 to 1994. As Investment Officer, Ms. Stanford reviewed market and economic data to determine appropriate investments and executed investment transactions for the City. Between 1991 and 1994, Ms. Stanford was supervised by the City's Chief Financial Officer, Mr. Michael Bell. On November 1, 1993, Ms. Stanford filed a Title VII employment discrimination Complaint against Mr. Bell and other City employees in the U.S. District Court for the Northern District of Georgia. In that Complaint, Ms. Stanford alleged that the Defendants discriminated against her on the basis of her race and gender.

Pursuant to Rule 920-2 of the Court's Internal Operating Procedures, the case was referred to Magistrate Judge Richard Deane for pretrial proceedings. In due course, the Defendants filed a Motion for Summary Judgment. Judge Deane recommended granting summary judgment for the Defendants in a Report and Recommendation dated February 17, 1995. The Report and Recommendation was adopted in its entirety by United States District Judge J. Owen Forrester. The Report and Recommendation's Statement of Background Facts explained Ms. Stanford's duties as Investment Officer and also recited the Defendants' particularized allegations that she neglected those duties. Most specifically relevant to the motion presently before this Court, the Report and Recommendation's Statement of Background Facts (1) concluded that a City manual setting forth investment guidelines was "generally in effect" while Ms. Stanford was Investment Officer, and (2) recited alleged facts regarding Mr. Bell's supervision of Ms. Stanford, which Ms. Stanford now alleges factually relate to whether she adequately informed supervisors of her activities.

Mr. Deane was subsequently named interim United States Attorney for the Northern District of Georgia in February, 1998. He was then nominated and was confirmed as United States Attorney in April 1998. In mid–1998, Ms. Stanford and her husband, Mr. Charlie Stanford, learned that the U.S. Attorney's Office was investigating investment trades Ms. Stanford placed while employed by the City. At the same time, the U.S. Attorney's office also was investigating Mr. Raymond McClendon, a principal with the investment firm Pryor, McClendon, Counts & Company, on related issues. This investigation continues. Ms. Stanford and Mr. McClendon seek to disqualify the U.S. Attorney's office from further participation in the matter.

During discussions with the U.S. Attorney's office in early 1999, Ms. Stanford's attorney, Mr. Anthony L. Cochran, learned that Mr. Deane himself had become substantially involved in the investigation against the Stanfords and Mr. McClendon.

On June 15, 1999, while reviewing discovery items, Mr. Cochran learned of Mr. Deane's 1995 Report and Recommendation in Ms. Stanford's Title VII case. Mr. Cochran notified Mr. Deane that he perceived a conflict of interest and requested a meeting to discuss the issue. At the meeting, Mr. Cochran requested that Mr. Deane and the entire U.S. Attorney's office recuse themselves from the investigation. After discussing the matter internally with staff, including the office's two professional responsibility officers, Mr. Deane notified Mr. Cochran that he did not believe the facts warranted recusal.

On August 27, 1999, Ms. Stanford filed with this Court a Motion to Disqualify the U.S. Attorney's office, a Motion to Seal the disqualification motion, and a Request for Emergency Hearing. The Court granted the Motion to Seal and scheduled an emergency hearing for September 1, 1999. On August 30, 1999, Mr. McClendon filed with this Court a Motion to Adopt Ms. Stanford's Motion to Disqualify and a Motion to Seal his adopted motion. At the September 1 hearing, Ms. Stanford and Mr. McClendon alleged that the two central issues in the U.S. Attorney's current investigation of them are likely (1) whether the City investment manual was in effect, and (2) whether Ms. Stanford adequately informed her supervisors of her investment transactions. Because then-Judge Deane's 1995 Report and Recommendation contained factual references to these two issues, Ms. Stanford and Mr. McClendon contended this Court should disqualify Mr. Deane and the entire U.S. Attorney's Office. Ms. Stanford and Mr. McClendon also contend that any further investigation and resulting prosecution should be conducted by the U.S. Department of Justice. While Ms. Stanford and Mr. McClendon did not assert that Mr. Deane and/or the U.S. Attorney's office have engaged in any actual impropriety, they did assert that Mr. Deane's past knowledge of facts surrounding Ms. Stanford's employment has created an appearance of a conflict which warrants disqualification.

At the conclusion of the hearing, this Court denied both Ms. Stanford's and Mr. McClendon's Motions to Disqualify. Because of the somewhat novel issues raised in this matter, this written Order is issued to explain in detail the grounds for denying the disqualification motions. The Order is written as of the procedureal posture of the case at the time of the hearing. That has changed since the hearing because of action taken by the grand jury.

## II. ANALYSIS

This matter presents two legal issues. First, this Court must decide whether it mat exercise jurisdiction in this matter prior to the issuance of an indictment. Second, if jurisdiction does exist, this Court must decide whether Mr. Deane and the U.S. Attorney's office should be disqualified from further investigation and prosecution of Ms. Stanford and Mr. McClendon. After careful review of controlling authority, the court concludes that it does not have jurisdiction. Because jurisdiction does not exist, the Court does not reach the merits of the disqualification issue.

This court lacks jurisdiction to disqualify Mr. Deane and the U.S. Attorney's office from further investigating Ms. Stanford and Mr. McClendon for two reasons. First, Ms. Stanford and Mr. McClendon's motions do not satisfy the "anomalous jurisdiction" standard established by the Fifth Circuit Court of Appeals in *Hunsucker v. Phinney*, 497 F.2d 29, 32 (5th Cir.1974).[1] Second, the disqualification motions do not otherwise meet the constitutional standard for ripeness.

### A. ANOMALOUS JURISDICTION

Anomalous jurisdiction is an equitable doctrine which allows a court to

---

1. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

exercise jurisdiction based on its inherent authority over officers of the court. *Hunsucker,* 497 F.2d at 32 & n. 3 (explaining doctrine's equitable nature and noting that all attorneys, including U.S. Attorney, are court officers). According to this doctrine, a court may exercise jurisdiction in extraordinary circumstances where other bases for jurisdiction do not exist to prevent irreparable harm caused by an officer of the court. *Cf. In re Grand Jury Proceedings,* 115 F.3d 1240, 1246 (5th Cir. 1997) (noting that failure to show necessity or irreparable injury weighs against exercise of anomalous jurisdiction); *Resmondo v. United States,* 536 F.Supp. 19, 23 (S.D.Fla.1981) (holding that court could not exercise anomalous jurisdiction where plaintiff's accountant, not law enforcement officers, illegally removed records from plaintiff's credenza). This jurisdiction may be exercised in criminal matters even though a grand jury has returned no indictment. *Hunsucker,* 497 F.2d at 32 & n. 3.

■ Despite this broad grant of equitable jurisdictional power, the *Hunsucker* court warned that a court should exercise anomalous jurisdiction "with caution and restraint" and "subject to equitable principles." *Id.* at 34. For example, the court should not exercise jurisdiction if the moving party either possesses an adequate remedy at law or will not suffer irreparable injury from the motion's denial. *Id.* at 34 n. 7. And even where a theoretical basis for anomalous jurisdiction exists, a court may refuse to exercise this discretionary and "unique power." *Id.* at 34. Furthermore, the Fifth Circuit recently observed that courts have questioned the very existence of anomalous jurisdiction. *See In re Grand Jury Proceedings,* 115 F.3d 1240, 1246 & n. 2 (5th Cir.1997) (citing, e.g., *Linn v. Chivatero,* 714 F.2d 1278, 1281 (5th Cir.1983)).

This Court declines to exercise anomalous jurisdiction in this matter because considerations of caution and restraint and equitable principles weigh strongly against it. Considerations of caution and restraint weigh against the exercise of anomalous jurisdiction because the Movants have not shown that an actual conflict of interest exists. They have failed to present any evidence that Mr. Deane learned confidential facts of Ms. Stanford's City employment while he served as Magistrate Judge or that he otherwise has engaged in any impropriety in the criminal investigation.

Federal courts typically exercise anomalous jurisdiction either to suppress evidence or return property seized by law enforcement officers. *See, e.g., United States v. Dean,* 80 F.3d 1535, 1542 (11th Cir.1996) (upholding exercise of anomalous jurisdiction where criminal defendant sought return of forfeited property), *modified,* 87 F.3d 1212 (11th Cir.1996). *See generally United States v. One 1988 Mercedes Benz,* 719 F.Supp. 595, 598 (E.D.Mich.1989) ("Anomalous jurisdiction usually has been asserted either to suppress evidence prior to criminal indictment or to deter unlawful conduct of law enforcement personnel"). Anomalous jurisdiction seldom is exercised for other reasons. Indeed, this Court's review of more than sixty reported federal cases reveals only one case where a court exercised anomalous jurisdiction to reach the merits of a motion to disqualify. *See In re Grand Jury Investigation of Targets,* 918 F.Supp. 1374, 1375–76 (S.D.Cal.1996) (exercising anomalous jurisdiction in criminal targets' pre-indictment motion to disqualify Assistant U.S. Attorney). And as the response filed by the U.S. Attorney's Office reminds this Court, no court has ever actually enjoined a federal criminal investigation on the basis of a conflict of interest, much less upon a mere appearance of a conflict of interest.

Ms. Stanford and Mr. McClendon rely heavily on the single case, *In re Grand Jury Investigation of Targets,* 918 F.Supp. 1374, 1375–76 (S.D.Cal.1996) [hereinafter *"Targets"*], where the court exercised anomalous jurisdiction over a motion to disqualify. Ms. Stanford and Mr. McClendon argue the *Targets* case in support of their

attempt to disqualify Mr. Deane and the U.S. Attorney's Office. In *Targets,* two targets of a grand jury investigation sought to disqualify an entire U.S. Attorney's Office because an Assistant U.S. Attorney learned confidential information when he previously represented one of the targets in a state investigation of the same matter. Although the Assistant U.S. Attorney was screened from any involvement with the federal investigation, the targets filed in federal district court a pre-indictment motion to disqualify the entire U.S. Attorney's office from further investigation or any resulting prosecution. The *Targets* court exercised anomalous jurisdiction without discussion. In deciding the merits based on applicable rules of professional conduct, however, the court refused to disqualify the U.S. Attorney's office from either further criminal investigation or any resulting prosecution.

Ms. Stanford and Mr. McClendon contend that Mr. Deane's personal involvement in the investigation and his refusal to recuse himself personally from any further involvement warrants disqualification of Mr. Deane and also the entire U.S. Attorney's office. Ms. Stanford and Mr. McClendon note that, unlike in *Targets,* Mr. Deane has not screened himself from the investigation but has retained his decision-making role in the prosecution of the matter. They suggest, although they do not directly state, that since anomalous jurisdiction was exercised in *Targets,* where an Assistant U.S. Attorney was screened from the investigation, it also should be exercised here where the U.S. Attorney has refused to screen himself from a potential conflict.

It appears to the Court that a showing of an actual conflict of interest, as existed in *Targets,* may authorize the exercise of unusual and discretionary authority that a mere appearance of conflict would not. In *Targets,* the Assistant U.S. Attorney previously had served as a private lawyer for one of the targets. Through that attorney-client relationship, the Assistant U.S. Attorney learned confidential facts from the target in a state investigation of the same matter the U.S. Attorney's office was investigating. In contrast, Ms. Stanford and Mr. McClendon have failed to show that Magistrate Judge Deane acquired any confidential information about Ms. Stanford *in camera, ex parte,* or through any other means due to his participation in the Title VII case.

■ An appearance of a conflict, without any allegation of an actual conflict, is insufficient to encroach on the Executive Branch's authority to conduct a criminal investigation as it chooses. The Eleventh Circuit Court of Appeals consistently has instructed the district courts not to interfere with the grand jury process absent strong justification. *See, e.g., Blalock v. United States,* 844 F.2d 1546, 1549 (11th Cir.1988) (rejecting appeal to enjoin grand jury investigation because of alleged improprieties by prosecutor and FBI); *United States v. Eisenberg,* 711 F.2d 959, 965 (11th Cir.1983) ("Until an indictment is returned and a case presented to the United States District Court, the responsibility for the functioning of the grand jury is largely in the hands of the U.S. Attorney"); *United States v. Pabian,* 704 F.2d 1533, 1536–37 (11th Cir.1983) (instructing district courts not to encroach into grand jury process without clear basis in fact and law, given constitutionally based independence of courts, prosecutors, and grand juries). This Court finds no such strong justification in the matter presently before it. Because no showing has been made that an actual conflict exists, this Court believes adherence to considerations of caution and restraint strongly weigh against the exercise of anomalous jurisdiction in this matter.

■ Equitable principles also weigh strongly against the exercise of anomalous jurisdiction in this matter. As the Fifth Circuit Court of Appeals instructed in *Hunsucker,* this Court should refuse to exercise anomalous jurisdiction if the moving party either possesses an adequate remedy at law or will not suffer irreparable injury from the motion's denial. Ms. Stanford and Mr. McClendon's motions fail

on both counts. Where an adequate remedy at law exists, this Court cannot exercise equitable jurisdiction. *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). An adequate remedy at law may exist even if it cannot be asserted currently, but rather only at some future date. Upon indictment, Ms. Stanford and Mr. McClendon can move to disqualify Mr. Deane and the U.S. Attorney's office from prosecuting the case. A motion to disqualify counsel is the proper method to notify a court of conflict of interest. *Musicus v. Westinghouse Elec. Corp.,* 621 F.2d 742, 744 (5th Cir.1980). The Eleventh Circuit Court of Appeals has instructed that where an ethical violation allegedly exists, a district court must identify the applicable rule of professional conduct and determine whether the challenged attorney violated that rule. *Schlumberger Technologies, Inc. v. Wiley,* 113 F.3d 1553, 1561 (11th Cir.1997). If a violation has occurred, the court may disqualify the offending attorney. Because Ms. Stanford and McClendon's post-indictment right to seek disqualification provides them with an adequate remedy at law based on rules of professional conduct, this Court should not exercise anomalous jurisdiction in this matter.

In addition, upon indictment, Ms. Stanford and Mr. McClendon can move to dismiss the indictments returned against them on the grounds of prosecutorial misconduct. As the Eleventh Circuit has explained on numerous occasions, federal courts possess the authority to dismiss an indictment because of prosecutorial misconduct, including abuse of the grand jury process. *United States v. White,* 846 F.2d 678, 693 (1988); *United States v. Sims,* 845 F.2d 1564, 1569 (1988); *Blalock v. United States,* 844 F.2d 1546, 1550 (11th Cir.1988); *United States v. Pabian,* 704 F.2d 1533, 1536 (1983). While dismissal is an "extreme sanction which should be infrequently utilized," *Sims,* 845 F.2d at 1569, it nevertheless can be exercised if the violation warrants it. *See United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) (recognizing federal courts' power to dismiss indictment if remedy is tailored to injury suffered). Because Ms. Stanford and Mr. McClendon's right to seek dismissal of any indictment provides them with an adequate remedy at law, this Court should not exercise anomalous jurisdiction in the matter presently before the Court.

▮▮▮▮ Ms. Stanford and Mr. McClendon also have not shown that they will be irreparably harmed by this Court's refusal to disqualify Mr. Deane and the U.S. Attorney's Office. Where irreparable injury will not occur, this Court cannot exercise equitable jurisdiction. *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Ms. Stanford and Mr. McClendon have failed to show they will suffer irreparable injury. First, Ms. Stanford and Mr. McClendon have not shown that Mr. Deane's involvement with Ms. Stanford's Title VII case has harmed them at all, much less irreparably. Ms. Stanford and Mr. McClendon have failed to show that Mr Deane's knowledge of facts surrounding Ms. Stanford's City employment in any way increased the likelihood they would be indicted. As this Court explained above when it discussed its adherence to caution and restraint in this matter, Mr. Deane obtained no confidential facts surrounding Ms. Stanford's employment while he served as Magistrate Judge. No evidence suggests that then-Judge Deane relied on anything but public records filed with this Court to draft his Report and Recommendation in the Title VII case. Because Mr. Deane did not learn confidential information about Ms. Stanford's employment while he served as a Magistrate Judge, this Court concludes that Mr. Deane's role in the criminal investigation has not harmed Ms. Stanford irreparably, or otherwise. Finally, they have not shown that they are less likely to be indicted if this matter is prosecuted by the United States Justice Department rather than the U.S. Attorney's Office.

▮▮▮ Second, Ms. Stanford and Mr. McClendon have failed to show why mere threat of indictment will harm them more

drastically than it would every potential defendant investigated by a grand jury. Mere threat of imminent indictment does not constitute the irreparable injury required to exercise anomalous jurisdiction. *In re Search of Kitty's East,* 905 F.2d 1367, 1371 (10th Cir.1990). Ms. Stanford and Mr. McClendon nevertheless contend mere threat of indictment does risk irreparable injury in this matter because the allegations that Ms. Stanford and Mr. McClendon misused public funds will interest the media and, therefore, increase their danger of stigmatization. While this Court recognizes that defendants subjected to the intense glare of the media's lenses may suffer more embarrassment than others, every defendant is stigmatized to some degree by a criminal indictment. This Court agrees with the Eighth Circuit Court of Appeals that to allow a mere threat of future prosecution to constitute irreparable harm would change anomalous jurisdiction from an extraordinary remedy to a rather ordinary one: every potential defendant could point to the same harm and, thus, invoke a court's equitable powers. *In re Search of 4801 Fyler Avenue,* 879 F.2d 385, 389 (8th Cir. 1989). This Court declines to travel down that potentially slippery slope on the facts presented in this matter.

## B. *RIPENESS*

■■■■ This Court also lacks jurisdiction to decide the merits of Ms. Stanford and Mr. McClendon's motions because they have not satisfied the constitutional standard for ripeness. The ripeness doctrine involves both jurisdictional and prudential concerns. First, Article III of the United States Constitution limits federal court jurisdiction to matters which have sufficiently developed for a court to resolve an actual dispute, rather than merely a hypothetical one. *Digital Properties, Inc. v. City of Plantation,* 121 F.3d 586, 589 (11th Cir.1997). Courts commonly refer to this limit on subject matter jurisdiction as the "case or controversy" requirement. *Id.* Second, even where the jurisdictional requirement of a case or controversy is

satisfied, prudence may nevertheless counsel judicial restraint from deciding a case. *Id.* In this matter, Ms. Stanford and Mr. McClendon's motions meet neither the jurisdictional nor prudential requirements of the ripeness doctrine.

■■■■ Ms. Stanford and Mr. McClendon have not satisfied the jurisdictional requirement of the ripeness doctrine because no case or controversy presently exists in this matter. A criminal case generally does not exist until a grand jury has returned an indictment. Fed.R.Crim.Pro. 7(a); *see United States v. Cocoman,* 903 F.2d 127, 129 (2d Cir.1990) (noting that under Rule 7(a) indictment or information is required for criminal prosecution in federal district court). Until then, a court should not interfere with the grand jury process, absent strong justification. *United States v. Pabian,* 704 F.2d 1533, 1536–37 (11th Cir.1983). Absent extraordinary circumstances, the Court has no jurisdiction prior to indictment.

■■■■ Even if the jurisdictional requirement were satisfied in this matter, prudential considerations would still require this Court to hold that Ms. Stanford and Mr. McClendon's motions are not ripe. A court must consider (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties if the court refuses to decide the merits of the matter before it. *Digital Properties,* 121 F.3d at 589. In determining fitness of the issues, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Atlanta Gas Light Co. v. Federal Energy Regulatory Comm'n,* 140 F.3d 1392, 1404 (11th Cir.1998), *quoting, Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998). The issues in this matter are not yet ripe for judicial decision because this Court does not know the nature of the charges that may be lodged against Ms. Stanford and Mr. McClendon. Grand juries must conduct their investigations in secrecy. Fed.R.Crim.Pro. 6(e)(2). Only when the grand jury returns an indictment will the

parties and this Court know facts and circumstances upon which the prosecution is based. Prudence dictates that this Court not engage in speculation, but instead require Ms. Stanford and Mr. McClendon to file their motions to disqualify again after the grand jury returns an indictment. Likewise, no evidence of undue hardship exists here. Ms. Stanford and Mr. McClendon have failed to show how (1) Mr. Deane's involvement in the grand jury investigation has harmed them, or (2) that the mere threat of indictment has subjected them to unique hardships not suffered by every grand jury target. Prudence thus dictates that this Court find that Ms. Stanford and Mr. McClendon have failed to satisfy the ripeness doctrine.

## CONCLUSION

Because this Court lacks jurisdiction to authorize such extraordinary relief to Ms. Stanford and Mr. McClendon, this Court DENIES Ms. Stanford's Motion to Disqualify and Mr. McClendon's adopted Motion to Disqualify Mr. Deane and the U.S. Attorney's Office from further investigation and prosecution of them.