ALTENBERND, Judge,
concurring in part and dissenting in part.
I concur that this forfeiture does not violate double jeopardy. If the instrumentality test is applicable to an Excessive Fines Clause analysis, see Hall Street, 74 F.3d at 1171, then I agree with the majority that the vehicle in this ease meets that test. Nevertheless, despite the majority’s well-presented analysis, I conclude that Mr. Wojnar failed to establish that the forfeiture of his automobile, which was used in a felony drug offense, is unconstitutional as an excessive fine. The proportionality test adopted by the majority, which admittedly has been used in several federal cases, does not consider the defendant’s financial resources. Although some proportionality test is probably necessary under the Excessive Fines Clause, I would include a consideration of the defendant’s financial resources as a factor within any *200 such test. If a defendant has the ability to own a particular car, I believe the Constitution usually permits a forfeiture of the vehicle for felony possession of marijuana occurring in that vehicle, so long as the defendant could replace it with another car without undue hardship. The majority’s holding will generally permit forfeiture of cars owned by poor people while prohibiting forfeiture from the rich.
Mr. Robert J. Wojnar was driving an ordinary three-year-old sports utility vehicle while in possession of a modest quantity of marijuana. I assume this drug was not intended for sale, but was intended for his personal use. Following a traffic stop, the state filed felony marijuana charges, and Tarpon Springs filed this forfeiture proceeding. This proceeding was pending when Mr. Wojnar entered a negotiated plea in the criminal case. He was not fined and received probation. After the criminal court imposed sentence, Mr. Wojnar amended his answer in the forfeiture proceeding and alleged a violation of the Excessive Fines Clause. Oddly, Tarpon Springs stipulated at the forfeiture hearing that the sports utility vehicle was worth $10,000, but it sold the vehicle during the pendency of this appeal for $4,059. As a result of today’s ruling, the state did not receive the $5,000 fine that could have been imposed, and Tarpon Springs will be required to pay Mr. Wojnar $5,941 more than the price it received for the vehicle.
My protest in this ease is not directed at my colleagues, but at a federal test that seems entirely unworkable and unpredictable. The four factors the federal courts have used give me little guidance. As explained in the majority opinion, we must first consider “culpability.” Although Mr. Wojnar pleaded nolo contendere, there is no debate that he is guilty of an intentional crime; he is “culpable.” If this factor is separate from the crime’s “gravity,” the only issue would seem to be whether there is some question of his guilt. There is none.
Second, we must evaluate the “gravity” of this crime. In my opinion, this factor is established by the legislature; it is not an invitation for the judiciary to reassess the seriousness of crimes. In this ease, the offense is a third-degree felony.
Third, we must examine the sentence that could be imposed. This factor is clearly interrelated with the “gravity” of the crime. The maximum penalty is five years’ imprisonment. Under the sentencing guidelines, however, this third-degree felony is subject to level one punishment. See § 921.0012(3), Fla. Stat. (1995). Thus, it will normally result in a sentence other than imprisonment. The maximum statutory fine, $5,000, is not drastically different from the value of this vehicle.
Finally, we must assess the “nature and value of the property forfeited.” It is a used sports utility vehicle worth about $10,000.
Having considered these four factors, what is the maximum net value of property subject to forfeiture under the Constitution? What amount would be “grossly disproportionate” to the offense? See Hall Street, 74 F.3d at 1172. I confess that these factors give me no real guidance. The last factor does not help to establish the maximum fair market value of the property subject to forfeiture; it merely determines whether the property’s value exceeds the maximum. The first three factors give me little information other than the defendant committed a particular third-degree felony unlikely to result in imprisonment.
Under the analysis employed by the federal courts, the state could have fined Mr. Wojnar $5,000 and Tarpon Springs could have taken his ear if, for example, it had been a 1982 compact sedan worth $1,800. He is lucky because he is wealthy enough to own a car worth $10,000. I cannot accept a rule that makes it “proportionate” only to take cars from people who own old ears or new cars with big loans. The alternative approach in Hall Street, to announce that there is a proportionality test without providing criteria, seems equally unpredictable, and I do not fault the majority for rejecting that approach.
We are not interpreting a statute limiting forfeitures to a reasonable penalty, nor are we deciding whether Tarpon Springs is using the best judgment in this case. The issue in this case is the maximum statutory forfeiture *201 permissible under the Constitution for carrying a user-quantity of marijuana. For a person who can afford to own a three-year-old sports utility vehicle, I am not convinced that the Constitution bars the forfeiture of that vehicle. Thus, if I were to use the federal courts’ approach, I would add a factor that considered the defendant’s financial resources. I note that Florida Standard Jury Instruction 6.12 includes a factor considering the defendant’s financial resources in fixing the amount of a punitive damage award. The Ninth Circuit also uses a more complex test in forfeiture eases that considers the defendant’s financial resources. See United States v. Real Property Located in El Dorado County, 59 F.3d 974 (9th Cir.1995). With this added factor, I conclude that the trial court’s decision could be affirmed under a multi-pronged proportionality test.
To avoid the unpredictability of a loosely structured proportionality test, I would suggest that, so long as the fine established by the legislature is constitutional for general application, the statutory forfeiture of property with a net fair market value up to three times the maximum fine should be regarded as presumptively constitutional, at least when there is no issue of the claimant’s innocence and the forfeiture occurs in lieu of a fine.[3] I would allow the trial court to consider the defendant’s financial resources in determining whether a forfeiture must be less than this trebled amount to avoid a constitutional problem with the forfeiture statutes as applied in a particular case, and I would permit the court to consider whether a forfeiture could be greater than this amount in a case involving a wealthy defendant.
I admit that this bright-line presumption is somewhat arbitrary. Perhaps it is simply an act of constitutional desperation, because I can find no structured approach that provides the necessary predictability. There is, however, a history and tradition of treble damages as a penalty under the common law. See generally Jenkins v. Wood, 145 Mass. 494, 14 N.E. 512 (1888) (tracing a treble damage provision to the statute of Gloucester).[4] While such damages are usually a trebling of compensatory damage, the trebling of the criminal fine at least ties the forfeiture to the legislature’s general assessment of the “gravity” of the offense. The tradition of treble damages seems as reasonable a balance point as any other. For felony possession of marijuana, this approach would permit forfeiture of almost any vehicle in which the claimant’s equity did not exceed $15,000. It could allow forfeiture of a Ferrari from a wealthy person in the rare case.[5] It would allow for the forfeiture of the sports utility vehicle in this ease.

. The vehicle involved in this case is not contraband. It was used to cany contraband. See § 932.702, Fla. Stat. (1995). If the personal property involved in the case were contraband or if it were either the proceeds of illegal activity or property purchased with such proceeds, I would not impose this limitation.

. The Statute of Gloucester was enacted in 1278 and may have been influenced by early Roman law, which provided for double, triple, and quadruple damages in certain cases. 2 Frederick Pollock & Frederic W. Maitland, The History of English Law, 480, 522 at n. 1 (2d ed. 1899). Colonial Massachusetts law in the early 1600s provided treble damages as a penalty for theft from an orchard or garden, using a person's horse without permission, and malicious prosecution. See The Laws and Liberties of Massachusetts (1648).

.Perhaps it would be simpler if the statute expressly allowed for a forfeiture of property up to three times the fine and provided for a lien in that amount on properly of exceedingly high value.